STATE OF NORTH CAROLINA v. PHILIP JAMES LOCKLEAR

No. 8216SC698

(Filed 1 February 1983)

1. Criminal Law § 99.7— admonition of witness—failure to speak up and answer question

In view of a series of inaudible answers and declinations to respond, it was not an abuse of discretion for the court, out of the jury's presence, to instruct a witness to "speak up and answer the questions" and "to answer them truthfully." Nor was it inappropriate, when the witness' conduct compelled further instructions, for the court to warn that contempt proceedings might emanate from further such conduct.

2. Criminal Law § 99.7— instructions to witness on consequences of perjury—suggestion witness hesitating to tell truth—no reversible error

The court's instructions on the consequences of perjury combined with its suggestion that the witness was hesitating to tell the truth because defendant was present, did not constitute reversible error where the court's remarks were not offered in the presence of the jury and thus did not invade its province, the witness did not refuse to testify, there was no indication that she changed her testimony as the result of the remarks, where there was no indication that defendant's attorney was discouraged from eliciting essential testimony, and where there was no indication that defendant's due process right to trial before an impartial tribunal was adversely affected.

APPEAL by defendant from *Morgan, Judge.* Judgment entered 29 January 1982 in Superior Court, ROBESON County. Heard in the Court of Appeals 13 January 1983.

Defendant appeals from a judgment of imprisonment entered upon his conviction for discharging a firearm into occupied property.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Grimes, for the State.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Judge.

[1] Defendant contends he was denied due process rights when the court intimidated the State's principal witness, the victim of

the alleged crime, by threatening her with confinement for contempt and prosecution for perjury. Under the circumstances presented we find no error.

Defendant was indicted for discharging a firearm into a trailer while it was occupied by the State's principal witness. He had been living with the witness, although he was married to someone else. A short time before the shooting incident he had indicated he did not want to see the witness any more. At trial time, however, he had resumed the live-in relationship.

In response to the prosecutor's first question the witness stated her name. Both the prosecutor and the court immediately told her she "need[ed] to speak up." In the testimony that followed she gave a further inaudible answer and was again asked by the prosecutor to "speak up." She then commenced pausing before answering some of the questions, and eventually made no response at all to a question.

The court excused the jury, instructed the witness to "speak up and answer the questions," and allowed further examination in the absence of the jury. When the witness made no response to three attempts by the prosecutor to elicit an answer to a question, the prosecutor requested that the court instruct her to answer the question. The court told the witness: "[Y]ou have been placed under oath and it's your obligation to . . . answer the questions as they are asked of you, and to answer them truthfully."

The examination continued and there ensued both a further direction by the court to the witness to "speak up," and a further instance of the witness not responding to a question. The court thereafter again instructed the witness, in pertinent part: "You are directed to answer the questions the District Attorney [asks] you. You can be punished by contempt if you do not answer those questions."

Further questions ensued, several of which the witness paused before answering. There were further instances of the court directing the witness to answer in an audible voice, and of the witness not responding fully until a question was repeated. Thereafter the court interrupted the questioning and stated to the witness:

> Your failure to answer [the] questions truthfully, can subject you [to] an indictment charge for perjury for telling . . . an untruth under oath. I want you to understand, completely, that you must answer the questions that are asked of you, and you must answer those questions in a truthful fashion. You must tell the truth when you answer them. I do not know what your relationship is with the defendant, but my impression is that you and he have known each other for some period of time and that you are in the process of not telling the truth because . . . hesitating . . . because there is some hesitation because he is sitting here. Whether or not it's your fault for what happened, or didn't happen, you are directed to tell the truth and to answer the questions. . . . You can be put in jail for thirty days for not answering and fined five hundred dollars. . . . If you fail to tell the truth, the District Attorney could indict you for perjury, an offense which is punishable possibly up to ten years.

Examination of the witness out of the jury's presence was then completed, and direct examination before the jury resumed. On five occasions following resumption of direct examination the court had to instruct the witness to hold the microphone or to speak into it. When a sixth instance occurred, the court excused the jury, advised the witness that its "patience [was] running out," instructed her to speak audibly into the microphone, and advised her that "[t]he next time we have to do . . . this, you're going to be in the custody of the Sheriff."

> The presiding judge is given large discretionary power as to the conduct of a trial. Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within his discretion.

*State v. Rhodes*, 290 N.C. 16, 23, 224 S.E. 2d 631, 635 (1976). In view of the iteration of inaudible answers and declinations to respond, it was not an abuse of discretion for the court, out of the jury's presence, to instruct the witness to "speak up and answer the questions" and "to answer them truthfully." Nor was it inappropriate, when the witness' conduct compelled further instructions, for the court to warn that contempt proceedings might

emanate from further such conduct. "On the contrary it was an effort on the part of the court to expedite the trial and obtain a clear understanding of the evidence. This is a proper function of the trial judge." *State v. Hickman,* 23 N.C. App. 662, 665, 209 S.E. 2d 525, 527 (1974).

**[2]** The court's instructions on the consequences of perjury, combined with its suggestion that the witness was hesitating to tell the truth because defendant was present, present a more serious issue. Chief Justice Sharp's admonition in this respect in *Rhodes, supra,* merits reiteration:

> [A] trial judge may, if the necessity exists because of some statement or action of the witness, excuse the jurors and, *in a judicious manner,* caution the witness to testify truthfully, pointing out to him generally the consequences of perjury. [Citations omitted.]
>
> . . . [However], whether the reference to perjury be made in or out of the presence of the jury, 'error may be found in any remark of the judge . . . which is calculated to deprive the litigants or their counsel of the right to a full and free submission of their evidence upon the true issues involved to the unrestricted and uninfluenced deliberation of a jury . . . .' [Citation omitted.] Therefore, judicial warnings and admonitions to a witness with reference to perjury are not to be issued lightly or impulsively. Unless given discriminatively and in a careful manner they can upset the delicate balance of the scales which a judge must hold evenhandedly. Potential error is inherent in such warnings, and in a criminal case they create special hazards.

*Rhodes,* 290 N.C. at 23, 224 S.E. 2d at 636 (emphasis in original).

The *Rhodes* opinion cites four possible hazards consequent upon the trial court's intimating that a witness has committed perjury: (1) that the court will invade the province of the jury, which is to assess the credibility of the witness and determine the facts from the evidence adduced, (2) that the witness will be caused thereby to change his testimony to fit the court's interpretation of the facts or to refuse to testify at all, (3) that the court's admonition may intimidate or discourage the defendant's attorney from eliciting essential testimony from a witness, and (4)

that the court's manner of warning a witness may adversely affect the defendant's due process right to trial before an impartial tribunal. *Id.* at 24-28, 224 S.E. 2d at 636-38. The trial court's remarks there were held reversible error because they "probably had the effect of stifling the free presentation of competent, available testimony." *Id.* at 28, 224 S.E. 2d at 638.

In *Webb v. Texas*, 409 U.S. 95, 34 L.Ed. 2d 330, 93 S.Ct. 351 (1972), on which our Supreme Court partially relied in *Rhodes*, the sole defense witness refused to testify for any purpose after the trial court admonished him concerning the consequences of perjury and threatened him with indictment and a prison sentence if he lied on the stand. The United States Supreme Court reversed the conviction, holding that the court's admonition "effectively drove [the] witness off the stand, and thus deprived the [defendant] of due process of law under the Fourteenth Amendment." 409 U.S. at 98, 34 L.Ed. 2d at 333, 93 S.Ct. at 353.

The potential hazards cited in *Rhodes*, some of which produced reversible error there and in *Webb*, did not materialize here. The court's remarks were not offered in the presence of the jury and thus did not invade its province. The witness did not refuse to testify, and there is no indication that she changed her testimony as a result of the remarks. There is no indication that defendant's attorney was discouraged from eliciting essential testimony, nor is there indication that defendant's due process right to trial before an impartial tribunal was adversely affected.

The record indicates, on the contrary, that defense counsel subjected the witness to rigorous cross-examination, and that the witness' testimony in response contained numerous statements clearly beneficial to defendant and detrimental to the State. For example, the witness testified that she told defendant she was not telling the officers the truth when she told them he shot through the trailer; that she told defendant she knew he did not shoot into the trailer; that she could not swear who shot the trailer and was not certain it was defendant; that she told the officers at the time that the car she saw was defendant's, but that she could not at trial say for certain whose car it was; and that she told defendant she knew he was not the guilty party, but she was going to say he was because she was "mad at him."

. . . [A] slide-rule definition of 'reversible error' to measure a trial judge's comments to a witness with reference to perjury has not been formulated. . . . 'The principal questions are . . . whether acts or reference regarding perjury . . . have the effect either of stifling the free presentation of all the legitimate testimony available, or of preventing the unprejudiced consideration of all the testimony given, either of which may be sufficient to constitute reversible error.'

*Rhodes*, 290 N.C. at 28, 224 S.E. 2d at 638. The record here reveals neither the stifling of free presentation of all legitimate testimony available nor prevention of unprejudiced consideration of all the testimony given. Under the circumstances presented we decline to hold that the court's remarks regarding perjury constituted reversible error.

We have carefully examined defendant's other two arguments, and we find therein no basis for reversal or re-trial.

No error.

Judges ARNOLD and HILL concur.