STATE OF NORTH CAROLINA v. PHILIP JAMES LOCKLEAR

No. 114PA83

(Filed 27 September 1983)

1. **Criminal Law § 99.7— admonitions to witness about perjury—invasion of province of jury—denial of fair trial**

In a prosecution for feloniously discharging a firearm into an occupied dwelling, the trial court's admonitions to the prosecuting witness to answer truthfully questions asked her by the prosecutor and warning her of the consequences of perjury invaded the province of the jury, probably caused the witness to change her testimony, and deprived defendant of a fair trial before an impartial judge.

2. **Weapons and Firearms § 3— discharging firearm into dwelling—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for feloniously discharging a firearm into an occupied dwelling.

Justice MITCHELL dissenting.

ON discretionary review of the decision of the Court of Appeals, 60 N.C. App. 524, 299 S.E. 2d 470 (1983), finding no error in the judgment entered by *Morgan, J.,* at the 25 January 1982 Criminal Session of Superior Court, ROBESON County. Heard in the Supreme Court 14 September 1983.

Defendant was tried upon a proper bill of indictment charging him with feloniously discharging a firearm into the dwelling house of Mary Hunt Campbell. He was found guilty, sentenced to imprisonment for eight years, and thereupon appealed to the Court of Appeals. That court found no error in the trial, and we granted discretionary review pursuant to N.C.G.S. 7A-31(a).

*Rufus L. Edmisten, Attorney General, by Donald W. Grimes, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for the defendant.*

MARTIN, Justice.

[1] We find prejudicial error with respect to defendant's first assignment of error and, therefore, reverse the decision of the Court of Appeals. In this assignment defendant argues that he was deprived of due process of law by the actions of the trial court regarding the state's principal witness.

The state's evidence tended to show that defendant and the state's witness Mary Hunt Campbell were friends and that they occasionally lived together in Ms. Campbell's mobile home. On the night in question they had an argument, and Ms. Campbell called the Fairmont police because defendant threatened her. Later in the night she heard "something" hitting her house. She again called the police. She went to the window and saw defendant's car parked down the road and defendant standing in the road with something in his hands. The officers testified that they saw defendant in his car on the highway after the first call. They advised him that he should go home. After the second call one officer in the vicinity of the Campbell home saw defendant in his car coming from the direction of the trailer park. The next day Ms. Campbell pointed out to an officer the spot where she saw defendant, and the officer found sixteen .22-caliber shell casings in the road. An examination of the house disclosed that some bullets had penetrated the wall and windows.

---

---

Defendant and his witnesses testified that although he had been at the trailer park about dark, he had left and did not return that night. One witness said he heard shots and looked out the window at Ms. Campbell's home but did not see defendant in his car.

Ms. Campbell in her testimony was very hesitant and appeared to be trying to help defendant. This brings us to the actions by the trial court about which defendant now complains. The trial court sent the jury out of the courtroom, and the following took place:

> THE COURT: Let the record reflect the following occurs in the absence of the Jury. Miss Campbell, I'm going to ask you to sit up close to the microphone, that you take your hand away from your mouth and that you put your hands in your lap, please, and speak up and answer the questions that are asked of you. I a, you're in the process of leading a witness. My observation is that the witness is being a, recalcitrant and hesitant and because of that I'm going to allow you to explore this matter in the absence of the Jury at this time, so we'll have an idea of about what's going to be coming.
>
> . . . .
>
> Q. And what did you call the police station for?
>
> A. (Pause—no answer.)
>
> Q. What did you call the police station for, Miss Campbell?
>
> A. (No answer.)
>
> Q. Did you call the police station because you were having trouble with Phillip?
>
> A. (No answer.)
>
> MR. WEBSTER: If it pleases the Court, I ask the witness be instructed to answer the question.
>
> THE COURT: Miss Campbell, you have been placed under oath and it's your obligation to a, answer the questions as they are asked of you, and to answer them truthfully.
>
> . . . .

Q. Who came there to your trailer?

A. I can't remember.

. . . .

THE COURT: You need to speak up, Ma'm. Remember I asked you to take your hand down from your mouth. Slip up to that microphone and speak into it, about three or four inches away, well, the electric is not on now. Speak up so we can all hear you.

. . . .

THE COURT: Let me interrupt you just a second. Miss Campbell, sometimes folks feel like that a, when there's difficulties between people who know each other that they can come into court as on assault on a female charge and say, "I don't want to testify." I would remind you that this is a proceeding in which a criminal charge has been made, and it is no longer your opportunity to say whether or not this matter will be prosecuted. You are directed to answer the questions the District Attorney asks you. You can be punished by contempt if you do not answer those questions. Do you understand that?

A. Yes, sir.

THE COURT: I am now directing that you answer the questions, the proper questions, any proper questions that are put to you by the Attorneys in this case, do you understand that?

A. Yes, sir.

. . . .

Q. Whose car was it, if you know?

MR. BRITT: Objection.

THE COURT: Objection is over-ruled.

A. (Pause.) I couldn't hardly tell, it was dark.

. . . .

Q. Who did you tell him got out of the car?

A. (Pause) It was dark, I couldn't tell who it was.

Q. Who did you tell Chief Pittman got out of the car?

A. Phillip.

. . . .

THE COURT: Mark "yes" in probable cause, (looking at file.) Just a second, I need to . . . Miss Campbell, not only are you required to answer the questions here; not only those questions asked out of the presence of the Jury but also those questions asked you in front of the Jury. Your failure to answer those questions truthfully, can subject you for an indictment charge for perjury for telling a, an untruth under oath. I want you to understand, completely, that you must answer the questions that are asked of you, and you must answer those questions in a truthful fashion. You must tell the truth when you answer them. I do not know what your relationship is with the defendant, but my impression is that you and he have known each other for some period of time and that you are in the process of not telling the truth because . . . hesitating . . . because there is some hesitation because he is sitting here. Whether or not it's your fault for what happened, or didn't happen, you are directed to tell the truth and to answer the questions. I am directing you to do that. Is that clear?

A. Yes, sir.

THE COURT: You can be put in jail for thirty days for not answering and fined five hundred dollars. Is that clear?

A. Yes, sir.

THE COURT: If you fail to tell the truth, the District Attorney could indict you for perjury, an offense which is punishable possibly up to ten years. Is that clear?

A. Yes, sir.

THE COURT: I am directing you to answer all proper questions put to you by the attorneys in this case. Do you understand that?

A. Yes, sir.

THE COURT: Do you understand that this case is not up to you, one way or the other?

A. Yes, sir.

THE COURT: It's not up to you take it up, or to continue with it. That is out of your hands now, do you understand that?

A. Yes, sir.

THE COURT: I direct that when you answer, you answer in a way that people hear. That you answer so that the court reporter can take it down, the gentleman who is sitting in front of you, and so, so that all the persons on the Jury can hear it. Is that clear?

A. Yes, sir.

Later, after some testimony by Ms. Campbell before the jury, the following took place in the absence of the jury:

THE COURT: Miss Campbell, in order for this trial to proceed, everyone must be able to hear. I have directed you to speak up and you continue to fail to speak up. Those of us who are responsible for the trial of this case and the Jury must hear. I must make notes about it; the court-reporter must take down every word that you say, and all thirteen Jurors must be able to hear. I'm a patient man but my patience is running out. Is that clear to you?

A. Yes, sir.

THE COURT: You are to answer the questions and you are to answer them in a way that everyone can hear. That microphone is there for the purpose of aiding you in doing that. I instruct you to answer the questions when they are asked of you, directly into the microphone so that everyone can hear. Are you prepared to do that?

A. Yes, sir.

THE COURT: The next time we have to do that . . . this, you're going to be in the custody of the Sheriff. Call the Jurors back in.

The jury returned, and Ms. Campbell continued her testimony:

Q. Miss Campbell, whose car was it that you saw there in the trailer park at that time?

A. Phillip's.

Q. And that's Phillip Locklear?

A. Yes, sir.

Q. And you saw it stop, didn't you?

. . . .

A. (Pause.) Yes, sir.

Q. And you saw Phillip get out of it, didn't you?

. . . .

A. Yes, sir.

Q. And you saw Phillip point the rifle at your house, didn't you?

. . . .

A. I couldn't tell what he had.

Q. And a, you could tell he had something, couldn't you?

A. Yes, sir.

Q. And at that point, something began hitting against your house again, didn't it?

A. Yes, sir.

Q. And Phillip was on the same side of the trailer where the bullets were striking, wasn't he?

A. Yes, sir.

The foregoing does not constitute all of the problems the trial judge had with this witness. Truly, her testimony and behavior on the witness stand would have sorely tried the patience of Job. However, the trial judge must not let himself be goaded into such responses as took place in this case.

With respect to this assignment of error, we reaffirm the principles stated by this Court through Chief Justice Sharp in *State v. Rhodes*, 290 N.C. 16, 224 S.E. 2d 631 (1976):

> The presiding judge is given large discretionary power as to the conduct of a trial. Generally, in the absence of controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial or which involve the proper administration of justice in the court, are within his discretion. . . . Thus a trial judge may, if the necessity exists because of some statement or action of the witness, excuse the jurors and, *in a judicious manner*, caution the witness to testify truthfully, pointing out to him generally the consequences of perjury. . . .

> Any intimation by the judge in the presence of the jury, however, that a witness had committed perjury would, of course, be a violation of G.S. 1-180 and constitute reversible error. . . . Moreover, whether the reference to perjury be made in or out of the presence of the jury, "error may be found in any remark of the judge, in either a civil or criminal trial, which is calculated to deprive the litigants or their counsel of the right to a full and free submission of their evidence upon the true issues involved to the unrestricted and uninfluenced deliberation of a jury (or court in a proper case)." . . . Therefore, judicial warnings and admonitions to a witness with reference to perjury are not to be issued lightly or impulsively. Unless given discriminatively and in a careful manner they can upset the delicate balance of the scales which a judge must hold evenhandedly. Potential error is inherent in such warnings, and in a criminal case they create special hazards.

> First among these is that the judge will invade the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the evidence adduced. . . . It is most unlikely that a judge would ever warn a witness of the consequences of perjury unless he had determined in his own mind that the witness had testified falsely. Therefore, if, while acting upon an assumption which only the jury can establish as a fact, he makes declarations which alter the course of the trial, he risks committing prejudicial

error. For this reason, *inter alia*, the judge has no duty to caution a witness to testify truthfully. "Once a witness swears to give truthful answers, there is no requirement to 'warn him not to commit perjury or, conversely to direct him to tell the truth.' It would render the sanctity of the oath quite meaningless to require admonition to adhere to it." . . .

A second hazard is that the judge's righteous indignation engendered by his "finding of fact" that the witness has testified untruthfully may cause the judge, expressly or impliedly, to threaten the witness with prosecution for perjury, thereby causing him to change his testimony to fit the judge's interpretation of the facts or to refuse to testify at all. Either choice could be an infringement of the defendant's Sixth Amendment rights to confront a witness for the prosecution for the purpose of cross-examination or to present his own witnesses to establish a defense. Both rights are fundamental elements of due process of law, and a violation of either could hamper the free presentation of legitimate testimony. The following statement from Annot., 127 A.L.R. 1385, 1390, is pertinent: "Any statement by a trial court to a witness which is so severe as to put him or other witnesses present in fear of the consequences of testifying freely constitutes reversible error."

. . . .

A third hazard is that the judge's admonition to the witness with reference to perjury may intimidate or discourage the defendant's attorney from eliciting essential testimony from the witness. This is particularly true when the judge anticipates a line of defense and indicates his opinion that the testimony necessary to establish it can only be supplied by perjury; *a fortiori*, if the judge's warnings and admonitions to the witness are extended to the attorney, coercion can occur. A law license does not necessarily insulate one from intimidation. In short, even a seasoned trial attorney may trim his sails to meet the prevailing judicial wind. If a defendant's attorney is intimidated by a trial judge's unwarranted or unduly harsh attack on a witness or the attorney himself, then the defendant's constitutional right to effective representation guaranteed by the Sixth Amendment is impinged.

. . . .

A fourth and final interest of a criminal defendant that may be affected by a trial judge's manner of warning a witness is the defendant's due process right to trial before an impartial tribunal. "A fair jury in jury cases and an impartial judge in all cases are prime requisites of due process." It is a maxim that " '[e]very litigant, including the state in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge.' " . . . The right to an impartial judge embraces a defendant's right to present and conduct his *own* defense unhampered by the judge's idea of what that defense should be or how it should proceed. . . .

Because of the inherent hazards and many potential errors in the innumerable factual situations in which they may occur, a slide-rule definition of "reversible error" to measure a trial judge's comments to a witness with reference to perjury has not been formulated.

*Id.* at 23-24, 26-28, 224 S.E. 2d at 635-38 (citations omitted).

Applying these considerations to the present case, we hold that the trial judge's actions invaded the province of the jury, probably caused the witness to change her testimony, and may have deprived defendant of a fair trial before an impartial judge. We note that after the last warning by the trial judge, the witness testified that it was defendant's car outside her house and that defendant was the person she saw outside her house at the time she heard the objects strike her home. It can be fairly inferred that this testimony resulted from the admonitions of the judge to Ms. Campbell. For this error, defendant is entitled to a new trial. *Id. See Webb v. Texas,* 409 U.S. 95, 34 L.Ed. 2d 330 (1972).

[2] Defendant also argues that the evidence was insufficient to carry the state's case to the jury. We disagree. Ms. Campbell's testimony as finally given, together with that of the officers, made it a case for the twelve. Nothing said herein should be construed as an expression of opinion as to the credibility of any witness and particularly Ms. Campbell. That is for the jurors who observe the witnesses and weigh their testimony.

New trial.

Justice MITCHELL dissenting.

I dissent for the reasons fully stated by Judge Whichard in his opinion for the Court of Appeals in this case. 60 N.C. App. 524, 299 S.E. 2d 470 (1983).