STATE OF NORTH CAROLINA v. RUBY LAWLESS LAMB·

No. 136PA87

(Filed 9 March 1988)

**1. Criminal Law § 99.7— warnings concerning perjury—no error**

In a second degree murder prosecution, the trial court and the district attorney did not improperly stifle the free presentation of testimony by warning a witness that she could be subject to perjury and contempt of court where the judge reminded the witness of the oath's significance and the consequences of perjury only after the witness had several times admitted that she had lied and the judge gave the warning in a judicious and nonthreatening manner. Nothing in the D.A.'s colloquy with the witness demonstrated reversible error and the record does not reveal that the other two witnesses were intimidated into changing their testimony.

**2. Criminal Law § 91.6— Speedy Trial Act—period between dismissal of first indictment and second indictment—properly excluded**

The trial court did not abuse its discretion in a murder prosecution by denying defendant's motion to dismiss for speedy trial violations where 342 days between dismissal of the first indictment and reindictment were excluded. The dismissal of the first indictment was under N.C.G.S. § 15A-931, so that the speedy trial exclusion of N.C.G.S. § 15A-701(b)(5) is applicable, even though the notice of dismissal was with leave, because defendant had appeared and the "with leave" language was mere surplusage. The fact that the investigation continued rendered the dismissal no less final because prosecution could not resume without a new indictment and, although defendant's bail bond should have been discharged, there was no prejudice since defendant was not required to appear or render herself amenable to the orders and processes of the court during that period. N.C.G.S. § 15A-932.

**3. Criminal Law § 91.9— Speedy Trial Act—findings and conclusions**

The trial court did not abuse its discretion in a murder prosecution by denying defendant's renewed motion to dismiss on speedy trial grounds without findings or conclusions where the court had orally entered the findings of fact and conclusions of law at the first hearing on defendant's motion to dismiss and defendant's renewed motion at trial merely renewed the original motion and added no new legal grounds.

**4. Criminal Law § 117— instructions—inconsistent statements of witnesses—no prejudice**

Although the trial court in a murder prosecution agreed to give defendant's requested instruction that the jury could consider witnesses' pretrial conflicting statements in determining truthfulness, but actually instructed the jury to consider consistent statements in determining truthfulness, there was no prejudice because the court had properly instructed the jurors about the consideration of prior statements at several points during the trial when the statements were introduced, the evidence at trial involved both consistent and

State v. Lamb

inconsistent prior statements of several different witnesses and much time was spent in attempts to discredit the statements, and the jury doubtless understood their duty as fact finders to consider consistencies and inconsistencies in deciding the veracity of a particular witness. N.C.G.S. § 15A-1443.

**5. Criminal Law § 86.4— murder prosecution—prior killings—motion in limine denied—prejudice**

The trial court erred in a murder prosecution by denying defendant's motion *in limine* to exclude evidence that she had been involved in other killings where the trial court deferred ruling on the motion until defendant renewed her motion near the close of her evidence but before she had rested or testified, and did not testify after her motion was denied. The statements were only available at that point as impeachment evidence and were inadmissible for that purpose under N.C.G.S. § 8C-1, Rule 608(b) because they showed specific instances of conduct relating to violence against other persons which would be relevant to defendant's veracity. That defendant was prejudiced was abundantly clear from the record that defendant intended to testify unless her motion *in limine* was denied and that defendant was justified in believing that if she took the stand, the district attorney intended to cross-examine her concerning the statements in question.

ON the State's petition for discretionary review of a unanimous decision of the Court of Appeals, 84 N.C. App. 569, 353 S.E. 2d 857 (1987), affirming in part, reversing in part and awarding defendant a new trial on her appeal from a judgment imposing a fifteen-year sentence following her conviction of second-degree murder, entered by *Bowen, J.,* at the 20 January 1986 Criminal Session of Superior Court, JOHNSTON County. Heard in the Supreme Court 12 October 1987.

*Lacy H. Thornburg, Attorney General, by Laura E. Crumpler, Assistant Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellee.*

MEYER, Justice.

Defendant was convicted of the second-degree murder of her husband. Defendant reasserts before this Court four of the five arguments she made to the Court of Appeals, specifically that the trial court committed prejudicial error (1) in admonishing a witness, out of the presence of the jury but in the presence of other witnesses, that she could be subject to perjury and contempt of court because of her testimony; (2) in denying defendant's motion to dismiss on the grounds that her statutory right to

a speedy trial was violated; (3) in denying her motion *in limine* to exclude any evidence implicating her in other killings; and (4) in failing to give her requested jury instructions and in giving improper and prejudicial instructions. Believing that the trial court committed prejudicial error in denying defendant's motion *in limine*, the Court of Appeals awarded defendant a new trial. We affirm.

On the morning of 3 October 1983, David Lee Lamb's body was discovered lying in bed in his trailer in Clayton, North Carolina. Death had resulted from a single bullet wound in the chest. Lamb had a gun in his left hand and a gun-cleaning rod in his right. A beer can was propped against his body. There were several other beer cans in the kitchen and the television was on. There was a spent shell casing on the bathroom floor, another on the bedroom floor and a bullet hole in the bedroom ceiling. According to expert testimony, the gun was fired several feet from the victim so that the gunshot wound could not have been self-inflicted.

David Lee Lamb was married to defendant, Ruby Lawless Lamb, who was living in Cowpens, South Carolina with her three grandchildren at the time of the murder. Although the investigation revealed that defendant had been to visit her husband the weekend of the murder, her alibi was that she had returned to Cowpens prior to the shooting. Defendant's family members corroborated her story and denied any knowledge of the circumstances surrounding David Lamb's death. On 7 April 1984, defendant was indicted for the first-degree murder of her husband. However, due apparently to the lack of evidence against defendant, the district attorney on 14 August 1984 "enter[ed] a dismissal . . . [w]ith [l]eave [p]ending the completion of the investigation." In July 1985, three of defendant's relatives came forward with statements implicating her in her husband's murder. Her sister, nephew, and niece stated that defendant had told them that she had shot David Lamb and had set it up to look like an accident. Defendant was reindicted on 22 July 1985. On 14 October 1985 defendant's grandson, who lived with defendant, gave a statement to the authorities to the effect that he had been with defendant in Clayton the weekend of the murder and had witnessed defendant shooting her husband. At trial, defendant adhered to her alibi defense.

During pretrial discovery, defendant discovered that during investigation of the case, several of her relatives had told officers that she had made statements to them that she had participated in other killings. Defendant had never been indicted for these killings. Defendant filed a pretrial motion *in limine* to have any evidence relating to the alleged killings excluded. The trial court deferred ruling on the motion. Near the close of defendant's evidence, but before she had rested or taken the stand herself, defendant renewed her motion *in limine* and the trial court denied it. Defendant then declined to take the stand. She was convicted of the second-degree murder of David Lamb and sentenced to fifteen years in prison.

On appeal, the Court of Appeals agreed with defendant that the denial of the motion *in limine* was prejudicial error, reasoning that the challenged evidence was inadmissible under any rule of evidence and that the trial court's failure to exclude it effectively precluded defendant from taking the stand. The Court of Appeals disagreed with the State's position that the issue was not capable of review since defendant had failed to take the stand and therefore had failed to present the alleged error within a reviewable context. *Luce v. United States*, 469 U.S. 38, 83 L.Ed. 2d 443 (1984). The Court of Appeals concluded that *Luce* was not binding upon North Carolina courts and that it was distinguishable from defendant's case. We granted the State's petition for discretionary review.

I

[1] Defendant first contends that the trial court and the district attorney "improperly stifled the free presentation of testimony by warning and threatening witness . . . [defendant's sister] Crooks in the presence of [two other] witnesses . . . , that she could be subject to perjury and contempt of court because of her testimony." We find no merit in this contention.

The State called defendant's sister, who testified about conversations she had had with defendant after David Lamb's death. The district attorney asked the witness to state whether defendant had ever elaborated on how the deceased had died. The witness responded:

A. Your Honor, could I please not testify? I don't know anything.

The trial court instructed the witness to answer. Defense counsel asked to be heard and the jury was excused. Following arguments by counsel, the court permitted the district attorney to pursue his questions outside the jury's presence. The answers indicated that the witness was a reluctant witness. When questioned about a prior statement she had given to investigators, she responded:

A. Maybe I lied, maybe I was the one that lied.

Q. I didn't ask you that. I asked you didn't Ruby Lawless Lamb tell you that she shot David Lee Lamb and that Wesley Warlick [defendant's grandson] was present at the time in his trailer in Clayton?

A. I lied.

Q. Did you tell, did you make that statement to Detective Eatman?

A. If I made it, I lied.

Q. Well, a moment ago you said she may have been drinking. Were you lieing [sic] then?

A. Yes.

. . . .

Q. So you have lied since you have been on the witness stand?

A. I lied on it all the way.

. . . .

Q. You do not deny making a statement to Detective Eatman that Ruby Lawless Lamb told you that she shot David Lee Lamb at his trailer and Wesley Warlick was present and she set it up to look like an accident — you admit telling Detective Eatman that, do you not?

A. I said it, but I lied.

Q. Well, why would you lie to Detective Eatman?

A. I'm just a liar.

. . . .

Q. I want you to think about this real carefully—you were sworn before you took the witness stand?

A. That's right.

Q. And you are telling this Court you have lied while you have been on the witness stand—you understand the meaning of talking [sic] an oath, do you not?

A. Yes.

Q. And I am going to ask you again whether or not Ruby Lamb told you how she killed David Lee Lamb and if she didn't set it up to look like an accident?

A. No.

Q. Was that a lie?

A. That was a lie.

. . . .

Q. And since you have gotten on the stand you have changed your mind about testifying against your sister, haven't you?

A. I didn't want to testify to begin with.

Q. And you don't want to testify now?

A. That's right.

Q. But don't you think—strike that. Didn't you also tell me during the noon recess, just a moment before you got on the stand, that Wesley Warlick wasn't going to have to carry all the blame and all the responsibility, didn't you tell me that seated in this courtroom just—

A. I did not mention Wesley's name, you did.

Q. Well, didn't you say that he won't [sic] going to have to carry it all?

A. I told you it wasn't right for Wesley to have to be in the situation he's in, yes.

Q. Well, you also told me you didn't want to testify against your sister, but if you had to take the stand, you wanted to get up here and get it over with, did you not?

A. I said I wanted to get it over with.

Q. And now you don't want to tell the truth about it and you don't want to testify against her, is that true?

A. Would you testify against your sister?

COURT: Ma'am, that is not the question. The question is — you were subpoenaed to be here. You have taken an oath to tell the truth. You are under a duty to answer the lawyer's questions and I must respectfully inform you that if you refuse to answer the lawyer's question, I have no alternative except to hold you in contempt of court, and I must further inform you that if you intentionally lie on this stand, you are subjecting yourself to perjury. Do you understand that?

A. I understand.

. . . .

MR. TWISDALE: Your Honor, I would like to ask one other question out of the presence of the jury.

COURT: All right.

Q. I would like to ask you, Mrs. Crooks, if you understood the warning concerning contempt?

A. Yes, sir, I did.

Q. Well, now I would like to ask you at this time if you are willing to proceed to answer my questions under oath and tell the truth?

A. Yes, sir.

MR. TWISDALE: I am ready to proceed, Your Honor.

COURT: Bring the jury in, please.

Defendant contends that the trial court's warnings were improperly accusatory and threatening and reveal that the court had determined that the witness had lied during her testimony on

direct examination. In support of this contention, defendant relies on *State v. Rhodes,* 290 N.C. 16, 224 S.E. 2d 631 (1976), and *State v. Locklear,* 309 N.C. 428, 306 S.E. 2d 774 (1983). Defendant's reliance on these cases avails her naught. In *Rhodes,* the trial judge actually accused the witness of not telling the truth and in *Locklear,* the trial judge repeatedly admonished the witness for her failure to respond to questions and also accused her of not being truthful. Here, in contrast, the judge reminded the witness of the oath's significance and the consequences of perjury only after the witness had several times admitted that she had lied. Furthermore, the judge gave the warning in a judicious and non-threatening manner. In *Rhodes,* we stated:

> [J]udicial warnings and admonitions to a witness [made in or out of the presence of the jury] with reference to perjury are not to be issued lightly or impulsively. Unless given discriminatively and in a careful manner they can upset the delicate balance of the scales which a judge must hold even-handedly. Potential error is inherent in such warnings, and in a criminal case they create special hazards.

*Rhodes,* 290 N.C. at 23, 224 S.E. 2d at 636. While any remarks by a judge to a witness about the consequences of perjury must be carefully scrutinized, Judge Bowen's warning to the witness in this case did not upset the "delicate balance of the scales." Moreover, although warnings by a district attorney with reference to a witness' alleged perjured testimony can "likewise deprive defendant[s] of due process of law," *State v. Mackey,* 58 N.C. App. 385, 388, 293 S.E. 2d 617, 619, *disc. rev. denied, appeal dismissed,* 306 N.C. 748, 295 S.E. 2d 484 (1982), nothing in the colloquy with this witness demonstrates reversible error. Finally, although the other two witnesses present in the courtroom during this exchange had apparently told a different story prior to trial and in spite of defendant's contention to the contrary, the record does not reveal that they were *intimidated* into changing their trial testimony because of the warning given to witness Crooks.

## II

**[2]** Defendant next contends that the hearing court abused its discretion in denying her motions to dismiss her indictment on the grounds that the State had violated the Speedy Trial Act,

N.C.G.S. §§ 15A-701 to -704 (1983), particularly N.C.G.S. § 15A-701(a1)(1). We disagree.

The original indictment for first-degree murder against defendant was obtained on 2 April 1984. On 14 August 1984, the district attorney filed a notice of dismissal. Defendant was reindicted for the same offense on 22 July 1985. In its 15 November 1985 ruling on defendant's original motion to dismiss the indictment, the trial court included 10 days and excluded 590 days of the 609-day time period from the 2 April 1984 original indictment to the 2 December 1985 scheduled session of court. Defendant's sole basis for her contention that her statutory speedy trial rights were violated is that the trial judge improperly excluded the 342-day time period between the dismissal of the first indictment on 14 August 1984 and the reindictment on 22 July 1985.

The district attorney may dismiss an indictment under either N.C.G.S. § 15A-931 or § 15A-932. Section 15A-931 provides that he may so dismiss "by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time." This is a simple and final dismissal which terminates the criminal proceedings under that indictment. Section 15A-931 does not bar the bringing of the same charges upon a new indictment. *See* Commentary.

Section 15A-932 provides for a dismissal "with leave" when the defendant fails to appear and cannot be readily found. Under subsection (b) of section 15A-932, this dismissal results in removal of the case from the court's docket, but the criminal proceeding under the indictment is *not* terminated. All outstanding process retains its validity and the prosecutor may reinstitute the proceedings by filing written notice with the clerk without the necessity of a new indictment.

N.C.G.S. § 15A-701(a1)(1), upon which defendant relies, provides that a criminal defendant shall be brought to trial "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last." However, where the district attorney dismisses an indictment under the authority of N.C.G.S. § 15A-931 and then reinstates charges by a new indictment, section 15A-701(b)(5) specifically excludes from computation of the 120-day time period "any period of delay from the date the initial charge was dis-

missed to the date the time limits for trials under this section would have commenced to run as to the subsequent charge." Defendant argues that the section 15A-701(b)(5) exclusion is inapplicable to her because the 2 April 1984 indictment was not dismissed under N.C.G.S. § 15A-931 since the notice of dismissal stated that the "prosecutor enters a dismissal . . . [w]ith [l]eave." She also argues that the indictment was still pending after the dismissal with leave because she remained on secured bail bond and the authorities continued to investigate the case. Defendant's arguments are unpersuasive.

The State argues that since defendant appeared, the dismissal "with leave" language was mere surplusage which added nothing to the notice of dismissal and took nothing away. We agree. Defendant relies on *State v. Herald*, 65 N.C. App. 692, 309 S.E. 2d 546 (1983), *cert. denied*, 310 N.C. 479, 312 S.E. 2d 887 (1984), in which the Court of Appeals stated that "[u]nder the present system of voluntary dismissals, no indictment is left pending. G.S. 15A-931." *Id.* at 693, 309 S.E. 2d at 548. This language appears to support the State's argument rather than defendant's. That the authorities continued to investigate the unsolved murder lends no assistance to defendant's argument. The fact that investigation continues after a section 15A-931 dismissal renders that dismissal no less final because the prosecutor may not resume criminal proceedings against a suspect unless and until a new indictment is obtained. In this case, no criminal proceedings occurred during the period from 14 August 1984 until the new indictment on 22 July 1985. The defendant appeared for trial, and in spite of the "with leave" language, the dismissal was proper. Defendant's bail bond should have been discharged, but since she was not required to appear or render herself amenable to the orders and processes of the court during that period, she has failed to show prejudice.

[3] Finally, defendant contends that the trial court abused its discretion when it denied her renewed motion to dismiss on speedy trial grounds because it failed to make factual findings or conclusions of law in support of its ruling. This argument is without merit. At the first hearing on defendant's motion to dismiss, the judge orally entered his findings of fact and conclusions of law into the record, to each of which defense counsel specifically objected. At trial, the trial judge inquired about the

motion for a speedy trial. Defense counsel simply referred the trial judge to the file, stating, "[T]he file speaks for itself and I will not offer any argument." Defendant's motion to the trial court merely renewed the original motion and added no new legal grounds. Since defendant relied upon the record motion, we find no error in the trial judge's denial of the motion on the same grounds and for the same reasons.

## III

[4] Defendant next argues that the trial court abused its discretion by failing to give defendant's requested special jury instruction and by giving instead an improper and prejudicial instruction. The Court of Appeals did not address this issue. We find error, but conclude that it was harmless.

During the charge conference, defendant requested in writing the following special jury instruction based on N.C.P.I.—Crim. 105.20:

> Evidence has been received tending to show that at an earlier time the witness, (name witness), made a statement which conflicts with his testimony at this trial. You must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made, *and that it does conflict with the testimony of the witness at this trial,* then you may consider this, together with all other facts and circumstances bearing upon the witness's truthfulness, in deciding whether you will believe or disbelieve his testimony at this trial.

(Emphasis added.) The trial court agreed to give the instruction on conflicting statements as requested, but in fact gave the following charge:

> Evidence has been received tending to show that at an earlier time the witnesses may have made statements which may be consistent or may conflict with their testimony in this trial. You must not consider such earlier statement as evidence of the truth of what was said at the earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made *and that it is consistent or does not conflict with the testimony of the witness at*

*this trial,* you may consider this, together with all other facts and circumstances bearing upon the witness' truthfulness in deciding whether you will believe or disbelieve his or her testimony at this trial.

(Emphasis added.) This Court has stated that if a "request be made for a special instruction, which is correct in itself and supported by evidence, the court must give the instruction at least in substance." *State v. Hooker,* 243 N.C. 429, 431, 90 S.E. 2d 690, 691 (1956). The emphasized portion of the *requested* instruction told the jury it might consider statements which conflicted with trial testimony, but the instruction as given told the jury that it might consider statements which did *not* so conflict. Defendant argues that the only reasonable effect of the trial court's instruction was to inform the jury not to consider prior *inconsistent* statements and that she was prejudiced thereby. In light of the circumstances of this case, we cannot agree. At several points during the trial when the witnesses' prior statements were introduced, the trial court properly instructed the jurors about their consideration of them. The evidence in defendant's trial involved both consistent and inconsistent prior statements of several different witnesses. Much time was spent in attempts to discredit the statements. Doubtless, the jury understood their duty as factfinders to consider consistencies and inconsistencies of prior statements in deciding the veracity of a particular witness. It is not reasonably possible that, had the trial court given defendant's instruction verbatim, a different result would have occurred at trial. N.C.G.S. § 15A-1443 (1983).

IV

[5] Defendant's final argument is that the trial court erred in denying her motion *in limine* to exclude any evidence implicating her in other killings. Defendant contends that the rulings of a pretrial hearing judge and of the trial judge denying her motion *in limine* impermissibly chilled her right to testify in her own defense. As related above, during pretrial discovery, defendant discovered that during investigation of the case, several of her relatives had told officers that she had made statements to them that she had participated in other killings of family members: the 1958 killings of a nephew and the nephew's mother in Tennessee

and the 1967 killing of a man in Asheville, North Carolina. Defendant had never been indicted for these killings.

On 31 October 1985 defendant filed a written motion *in limine* to have the court instruct the district attorney to "refrain absolutely" from "introduc[ing] evidence, mak[ing] reference to, or otherwise leav[ing] the jury with the impression that this defendant is a hardened criminal who has committed prior homicides and other criminal activity." In her brief in support of her motion *in limine* defendant referred to the State's "possession of various extrajudicial statements allegedly made by the defendant inculpating the defendant in other criminal activity including homicides committed prior to the death of the victim in this cause, David Lamb," and argued that to permit the State's witnesses to inform the jury about the statements would inflame the jury's passions and create unfair prejudice to defendant in violation of Rule 403. She further argued that admission of the challenged evidence would serve to place the matter of her character before the jury in violation of Rule 404. The hearing judge elected to defer ruling on this motion so that it might be determined by the trial judge.

Defendant's case was called for trial several months later on 20 January 1986. After jury selection, but before the trial itself had begun, defendant asked the trial court to consider her motion *in limine*. This time her argument was twofold: first, that the State should not be allowed to introduce the evidence during its case-in-chief in violation of Rules 403 and 404 and, second, that the State should not be permitted to question defendant herself as to any of the alleged crimes. The prosecutor argued that the evidence would show common plan, design or scheme and would shed light on why those relatives who had finally come forward were previously so reluctant to testify:

> MR. TWISDALE: Your Honor, I would ask the Court to delay its ruling until such time as it appears this evidence may be presented. But this evidence, if it could be brought out, would show, in answer to questions why these relatives, brothers and sisters, or brothers-in-laws [sic] and sisters of this defendant came forward, it's on account of the prior assaults and murders and perhaps another one that was planned in the near future, is the reason that they came forward and agreed to testify against her, and so they may be

very relevant or become more relevant, depending on what the witnesses say.

The trial court deferred ruling on the motion. The trial proceeded, but the prosecutor did not introduce any evidence as to these statements of defendant during the State's case-in-chief. Near the close of defendant's evidence, but before she had rested or taken the stand herself, defendant renewed her motion *in limine* "concerning the request that the state not be allowed to go into any prior activities allegedly done by Mrs. Lamb." The trial court responded:

> COURT: I'm not going to put the muzzle on on [sic] cross-examination, if that is what the question is.

Defendant asked for a ruling on the motion. The prosecutor argued that he did not "think [he] should be limited, depending upon what she [(defendant) said] on the witness stand." Upon defendant's insistence on a ruling, the trial court denied the motion. At that, defendant declined to testify and rested her case.

Defendant now argues that the trial court abused its discretion in denying her motion *in limine* because the challenged evidence was inadmissible and prejudicial and because she had no assurance that she would not be cross-examined concerning those statements. She argues that because of this error she was impermissibly discouraged from taking the stand. The State, on the other hand, argues that the issue is not capable of review because defendant failed to take the stand and thus failed to present the error within a reviewable context. *Luce v. United States*, 469 U.S. 38, 83 L.Ed. 2d 443 (1984). We express no opinion on the applicability of *Luce* to the denial of a motion *in limine* made pursuant to Rule 608(b), but we conclude that defendant suffered prejudice from the bald denial of her motion and must therefore be awarded a new trial.

When defendant made her pretrial motion, she argued that the statements she made to her relatives concerning prior killings were inadmissible under Rule 404(b), which provides in part that evidence of other crimes is not admissible to prove the character of a person in order to show that she acted in conformity therewith. Defendant also relied on Rule 403, which provides in part that relevant evidence may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice. The State thereafter chose not to introduce the evidence during its case-in-chief, even though it had argued that the statements were admissible to prove motive, scheme or common plan. When defendant made her motion for the third time near the close of her evidence, she was at the point in the trial where she had to decide whether to take the stand and testify in person. By that time, the statements in question were only available as impeachment evidence in the hands of the State and their admissibility was governed by Rule 608(b).

Rule 608(b) provides in part that specific instances of conduct, if probative of truthfulness or untruthfulness, may be inquired into on cross-examination of the witness concerning her character for veracity. In *State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986), we noted that "Rule 608(b) represents a drastic departure from the former traditional North Carolina practice which allowed . . . cross-examin[ation] for impeachment purposes regarding *any* prior act of misconduct" if the question was asked in good faith. *Morgan*, 315 N.C. at 634, 340 S.E. 2d at 89. Under Rule 608(b), evidence of a specific instance of conduct is not admissible for impeachment purposes unless it "*is in fact probative* of truthfulness." *Id.* We stated that "'evidence routinely disapproved of as irrelevant to the question of a witness' . . . veracity . . . includes specific instances of conduct relating to . . . *violence against other persons.*'" *Morgan*, 315 N.C. at 635, 340 S.E. 2d at 90 (quoting 3 D. Louisell & C. Mueller, Federal Evidence § 305 (1979)). We note that in the case *sub judice* the actual statements defendant is alleged to have made to her relatives about her involvement in other killings were apparently not made available to the trial judge and are not part of the record before this Court. We have only a summary statement of their content. Nevertheless, the evidence appears to be inadmissible under Rule 608(b) because it shows specific instances of conduct relating to violence against other persons which would be irrelevant to defendant's veracity.

In this case, the court did not err in deferring its ruling upon defendant's motion *in limine* either at the pretrial hearing or later at the beginning of the trial. Neither the statements defendant's relatives were alleged to have made to the authorities nor the affidavits given by those same relatives to defense counsel

recanting their statements were before the judge hearing the pretrial motion or the trial judge. The trial court, at these early stages, had no factual context in which to make a decision and properly deferred its ruling. The Rules of Evidence are not to be applied in a vacuum; they are to be applied in a factual context. A trial court makes its decisions as that factual context unfolds and as the circumstances warrant.

Not every. denial of a defendant's motion *in limine* results in a chilling of defendant's right to testify. Whether this result occurs depends on the peculiar facts of each case. However, it is abundantly clear from the record before us in this case that defendant intended to testify unless her motion *in limine* was denied. At one point in the proceedings, the district attorney stated that "[throughout the trial] I had been led to believe that the defendant was going to testify . . . ." Defendant evidenced her intention to testify by pressing the court throughout the trial to rule on her motion so that she would know if she could testify without being impeached by the statements in question. When the point came when she had either to testify or to rest her case, she insisted that the trial judge rule on her motion. We agree with the Court of Appeals that "[defendant's] intent to testify, were it not for the ruling, seems clear." *State v. Lamb*, 84 N.C. App. 569, 583, 353 S.E. 2d 857, 865. While the State contends that the district attorney never asserted that he absolutely intended to cross-examine defendant with the statements in question, we conclude that defendant was justified in believing that if she took the stand, he would do so. During the course of a hearing just before the trial started, the district attorney said:

> [I]f she takes the stand I can certainly ask her about any crime she ever committed or any assault of this nature she ever committed, or any person she has ever killed, as long as I have a basis therefor.

Again, when defendant renewed her motion near the close of her case, the trial judge asked the district attorney what his position would be on cross-examination should the defendant testify. The district attorney's reply was:

> Your Honor, as to any prior acts of violence, the Oscar Davis matter in Asheville, the victim having been shot in bed with her placing a pillow over his head, I think would be highly

competent and subject to cross-examination, as well as any other act of violence resulting in the death of anyone.

Here, the State's case was dependent on the testimony of defendant's relatives, who had come forward late in the game so to speak, who had changed their accounts of events often, and who in fact had attempted to retract their accounts concerning the very statements in question. Because the case rested so completely on these witnesses' testimony, any undue discouragement of defendant's right to take the stand in her own defense to refute that testimony was fraught with prejudice.

We should not be understood as saying that evidence such as defendant's statements here would *never* be admissible. Had defendant taken the stand and had the prosecutor decided to pursue his questioning of defendant in an impermissible manner, the trial court could have changed its ruling on defendant's motion. A ruling on a motion *in limine* is a preliminary or interlocutory decision which the trial court can change if circumstances develop which make it necessary. Or, had defendant taken the stand and testified that she had never made such statements or had never been involved in any prior acts of violence to the person, she would have "opened the door." Although the statements appeared inadmissible under Rule 608(b), had defendant thus opened the door, the prosecutor would then have been at liberty to use the statements to impeach defendant.

Here, however, in spite of her repeated renewals of her motion *in limine*, defendant never received any assurance that, should she testify, provided she did not open the door, she would be protected from impermissible evidence being used to impeach her. She received only a bald denial of her motion.

In the context of the facts presented here, we are unable to conclude that defendant's right to testify in her own behalf was not impermissibly chilled. Defendant is entitled to a new trial. The decision of the Court of Appeals is affirmed.

Affirmed.