BRYANT, Judge.
After hearing evidence presented at trial concerning the role defendant's text messages played in prompting the victim to report defendant's conduct to a magistrate, the court was well within its discretion to revisit a pretrial ruling that initially precluded the admission of the messages. Accordingly, we hold no error.
Defendant Carlton Robert Isley, III, was arrested and charged with misdemeanor assault on a female by a warrant issued on 9 January 2014 stating there was probable cause to believe defendant assaulted Chelsea Ann Kirby by striking her about the face. Defendant was convicted in District Court and appealed his conviction to superior court for a trial by jury. Prior to trial, defendant filed a motion in limine to suppress statements made between himself and Kirby, specifically, text messages exchanged after defendant and Kirby met for a date.
The matter came on for trial in Guilford County Superior Court during the 20 July 2015 criminal session, the Honorable Eric C. Morgan, Judge presiding. The court heard arguments on defendant's motion in limine , conducted a Rule 403 balancing test, and concluded the text messages exchanged between defendant and Kirby were more prejudicial than probative. Defendant's motion in limine was granted, and the State was instructed not to reference the text messages.
At trial, Kirby described how she met defendant through an on-line dating website, exchanged emails, and eventually agreed to meet. Defendant selected a restaurant in Greensboro, and they met there on Saturday, 5 January 2014 just before 8:00 p.m. The restaurant was "semi-crowded." At dinner, Kirby described defendant's conduct as ranging from boastful to demeaning before culminating with a slap to her face.
During the initial conversation, defendant informed Kirby that he was enrolled in BLET (Basic Law Enforcement Training); he talked about the things he had learned in his classes and bragged that he could "take down" someone three times his size. When defendant asked where she worked, Kirby replied that she worked at a Cracker Barrel restaurant, but did not give specifics as to which one. Kirby testified that defendant seemed offended by her reluctance to provide more details about herself. From there, the conversation turned to defendant's past experiences and perceptions of women: "how women are using men for free things and attention and that the dating website is nothing but girls that are going out for-just to get a night out on the town, just kinda speaking derogatively towards females...." Kirby testified that at this point "I was gonna probably never talk to him again." Then Kirby cursed. "[H]e was like 'It's okay. Just don't do it again or I'm gonna pop you in the mouth.' " When Kirby cursed again,
he reached across the table and slapped me right here (indicating), ... loud enough to make a slap and loud enough to-hard enough to piss me off and to storm out-didn't retaliate, didn't throw water in his face, didn't slap him back, I just stormed out.
The day after their date, defendant sent messages to Kirby through Facebook, that she found "intimidating." She had someone at work walk her to her car and requested that law enforcement officers walk through and around her home. The next day, she went to a magistrate's office. Upon showing the magistrate defendant's messages, she was advised to take out harassment and assault charges.
At the close of Kirby's trial testimony, the State moved to admit the electronic communications between Kirby and defendant into evidence. Over defendant's objection, the court granted the State's motion to admit the messages.
During his testimony, defendant was asked about the messages he sent Kirby. He stated that he wanted to get closure and to understand why she walked out on him. When she responded "rude[ly]," "I just reacted, aftershock." When asked why he wrote "Apsley" as the last word in the last electronic communication, defendant testified that his messenger auto-filled/auto-corrected the word "Adios." During her testimony, Kirby stated that she lived on Apsley Street.
Following the close of the evidence, the jury returned a guilty verdict against defendant for assault on a female. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to an active term of 60 days, then suspended that sentence and placed defendant on unsupervised probation for 24 months. Defendant appeals.
_________________________
On appeal, defendant argues that the trial court erred by concluding he "opened the door to admission of the prejudicial and irrelevant text messages, after it had already abused its discretion in allowing limited references to the texts." Defendant's argument assumes the trial court was without authority to revisit its pretrial ruling on defendant's in limine motion to suppress evidence of text messages and further erred by admitting the messages. We disagree.
"A motion in limine is, by definition, a motion made '[o]n or at the threshold; at the very beginning; preliminarily.' In other words, a motion in limine is a preliminary or pretrial motion." State v. Tate , 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980) (quoting Black's Law Dictionary, p. 708 (5th ed. 1979)). "The fact that it is a motion to suppress denotes the type of motion that has been made. The fact that it is also a motion in limine denotes the timing of the motion regardless of its type." State v. McNeill , 170 N.C. App. 574, 579, 613 S.E.2d 43, 46 (2005) (citation omitted); see also N.C. Gen. Stat. 15A-975(a) ("Motion to suppress evidence in superior court prior to trial and during trial"). "A ruling on a motion in limine is a preliminary or interlocutory decision which the trial court can change if circumstances develop which make it necessary." State v. Lamb , 321 N.C. 633, 649, 365 S.E.2d 600, 608 (1988).
Pursuant to our Rules of Evidence, "[a]ll relevant evidence is admissible.... Evidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (2015). However, pursuant to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. § 8C-1, Rule 403. "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." State v. Coffey , 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citations omitted).
Here, defendant's motion in limine to suppress electronic messages between himself and Kirby was granted by the trial court that initially determined the messages were more prejudicial than probative. During trial, Kirby testified to the events that led to her date with defendant and the events that transpired leading her to seek the aid of law enforcement.
A. I dropped a curse word [at dinner]-... he said "Pretty girls shouldn't say ugly words," ... he was like "It's okay. Just don't do it again or I'm gonna pop you in the mouth."....
....
And so I was talking, and I, God forgive me, cussed again, and, sure enough, he reached across the table and slapped me....
....
Q. And when did you actually take charges out on the defendant?
A. Two days later.
Q. And why the lapse in time?
A. Because he continued to message me, text-message, and then a couple days after that Facebook-message. He found me on Facebook.
Q. And did you ever call the police?
A. I did call the police when his text messages were intimidating. I called the police-
....
Q. So these messages were intimidating.
A. They were very intimidating. And the fact that he's training to be a police officer. What kind of connections has he made? I had somebody walk me out to my car from work, because I received these messages at work. I immediately called the police to make sure that my home was not-that my home was safe, basically. ...
They drove into the development with me, walked into my house, around my house with me, and from that point on I went into the house and locked my doors and waited until my dad got home and did not leave my own house.
Q. And what did the police tell you to do, if anything, with regards to the defendant?
A. They told me to go down to the magistrate's office....
....
Q. (Interposing) So you went down to the magistrate's office for a restraining order.
A. Yes. ...
And so they recommended-through showing of the text messages and telling them what had happened, they recommended I take out harassment charges and assault charges.
Q. And did you take those charges out?
A. I did.
Kirby was cross-examined by defendant, in relevant part, as follows:
Q. And after you left [dinner], you said that [defendant] contacted you again?
A. Yes.
Q. Did you ever respond to him when he contacted you?
A. Yes. I told him to leave me alone three times.
....
Q. Now, you said that after that you had to call the police because you were afraid that he was around you, right?
A. After his intimidating text messages voicing that he knew where I lived-
....
Yes.
Following cross-examination, the State moved for the text messages to be admitted. Over defendant's objection, the court granted the State's motion. Kirby then read the text messages for the jury.
A. Okay. Mr. Isley says to me the day after our date "Hey, you." Two hours later he says "So you aren't going to speak to me now?"
Then I respond with "Lose my number. I wish I would have reached across the table and smacked you right back. You are rude and disrespectful in every way, talking about yourself and even accusing me, women in general, of using men for free meals. You're a chauvinistic pig who deserves to be alone. Do not message me back. I don't ever want to hear from you again."
He responds with "Ha. I never said you or accused you. You mistook everything I said. I was speaking in terms of general society and how the world is. If I thought you were that way, I would not have met you. And yes, you got a free meal, as you should've paid for, but, you know, I'm not a close-minded, narrow-headed imbecile that can't take a joke. You storm off and be a bitch. No wonder you have stalkers."
"Leave me alone," is what I respond with. He then says "You texted back. You 'f' off. I said what I had to say. It's people like you that are the reasons why a relationship would never be possible. You are worth nothing more than to be bent over and used. I'm [a] bigger [person] than you. I will drop it, and I will live on happily. As for you, you have much learning to do. Don't respond. Apsley."
The evidence indicates that defendant's conduct during dinner as well as the text messages exchanged in the aftermath led Kirby to visit a magistrate and take out a charge of assault on a female. The content of the text messages was probative of Kirby's testimony regarding the events that occurred during the date, the basis for her fear, as well as defendant's demeaning attitude toward women, disposition toward the use of force or threat of force, and intimidation. The trial court was well within its discretion to revisit its preliminary, pretrial ruling on defendant's motion to suppress the text messages and, during the course of trial, determine that the content of the messages was more probative than prejudicial. See N.C.G.S. § 8C-1, Rule 403 ; Lamb , 321 N.C. at 649, 365 S.E.2d at 608. Thus, it was not error for the trial court to revisit its ruling and admit the text messages.
NO ERROR.
Report per Rule 30(e).
Judges HUNTER, JR., and DIETZ concur.