STATE OF NORTH CAROLINA v. SAMUEL R. FLIPPEN

No. 178A95-2

(Filed 6 November 1998)

**1. Criminal Law § 1398 (NCI4th Rev.)— prior death sentence reversed—new sentencing hearing rather than life imprisonment—no error**

The North Carolina Supreme Court was not required to overturn a death sentence and impose a sentence of life imprisonment where the Court in the previous appeal had remanded the case under N.C.G.S. § 15A-2000(d)(3) for error in the instructions and had not reached the question of arbitrariness under N.C.G.S. § 15A-2000(d)(2).

**2. Criminal Law § 1370 (NCI4th Rev.)— capital sentencing—aggravating circumstances—particularly heinous, atrocious or cruel—death of child**

The trial court did not err in a capital resentencing hearing by submitting the especially heinous, atrocious, or cruel aggravating circumstance where defendant contended that allowing the submission of the circumstance creates a new statutory aggravating circumstance for all cases in which the homicide victim is a child. In this case, ample evidence demonstrated that defendant had a parental relationship with the victim; the victim was only two years and four months old and was particularly vulnerable and at defendant's mercy; and defendant inflicted numerous blows upon her head, neck and abdomen resulting in injuries which went beyond what would have been necessary to kill her.

**3. Criminal Law § 693 (NCI4th Rev.)— capital resentencing—mitigating circumstance—no significant history of prior criminal activity—no peremptory instruction**

The trial court did not err in a capital resentencing by failing to give a mandatory peremptory instruction on the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where the State and defendant had stipulated in the first trial that defendant had no significant history of prior criminal activity. A prior stipulation or concession regarding capital sentencing circumstances does not limit the parties' presentation of evidence when relevant evidence contradicts that prior stipulation. N.C.G.S. § 15A-2000(f)(1).

**4. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstances—instructions**

The trial court did not err in a capital resentencing by failing to require the jury to make separate findings as to whether nonstatutory mitigating circumstances existed and whether they had mitigating value. The trial court properly instructed the jury regarding each nonstatutory mitigating circumstance pursuant to *State v. Robinson*, 336 N.C. 78, and it is presumed under *State v. Jennings*, 333 N.C. 579, that the jury followed the instructions. The jury's rejection of a nonstatutory mitigating circumstance that exists does not render the sentencing recommendation arbitrary and does not hinder appellate review of the recommendation.

**5. Criminal Law § 1343 (NCI4th Rev.)— capital resentencing—two-year-old victim—videotape—admissible**

The trial court did not abuse its discretion in a capital resentencing for the murder of a child by admitting into evidence a videotape of the victim. The rules of evidence do not apply in sentencing proceedings although the trial court here admitted the evidence after a thorough consideration of its probative value.

**6. Appeal and Error § 147 (NCI4th)— capital resentencing— defendant's prior treatment of victim—reviewable only for plain error—plain error review waived**

Defendant in a capital resentencing waived review of whether the court erred by admitting testimony regarding defendant's prior treatment of the child victim where defendant neither moved *in limine* to exclude this testimony nor objected to it, so that the issue was reviewable only for plain error, and defendant also waived plain error review by failing to allege in his assignment of error that the trial court committed plain error.

**7. Criminal Law § 448 (NCI4th Rev.)— capital resentencing— jury selection—prosecutor's statement—courage required to vote for death penalty**

The trial court did not abuse its discretion in a capital resentencing by allowing the prosecutor to refer during jury selection to the courage required to vote for the death penalty.

STATE v. FLIPPEN

[349 N.C. 264 (1998)]

**8. Appeal and Error § 147 (NCI4th)— capital resentencing— question about defendant's testimony in first trial—no objection—no assignment of error—constitutional issue not raised at sentencing**

An assignment of error in a capital resentencing to a question about defendant's testimony in his first trial was not properly preserved for appellate review where defendant did not object at trial, waived plain error review by failing to allege in his assignment of error that the trial court committed plain error, and further waived review of any constitutional issue by failing to raise it at the sentencing proceeding.

**9. Criminal Law § 439 (NCI4th Rev.)— capital resentencing— prosecutor's characterization of defendant's demeanor— no abuse of discretion**

The trial court did not abuse its discretion in a capital resentencing by failing to sustain defendant's objection to the prosecutor's characterization of defendant's demeanor at trial as "sniveling." Remarks relating to a defendant's demeanor are permissible because the defendant's demeanor is before the jury at all times.

**10. Criminal Law § 690 (NCI4th Rev.)— capital resentencing— peremptory instructions denied—no error**

The trial court did not err in a capital resentencing by denying defendant's request for peremptory instructions on the nonstatutory mitigating circumstances that defendant was kind and considerate to others, that defendant assisted the emergency medical technicians, and that defendant loved his stepdaughter, the victim. The evidence was controverted in each instance in which the trial court denied defendant's request and the trial court acted properly in denying the request.

**11. Criminal Law § 1402 (NCI4th Rev.)— death sentence—supported by evidence—not entered under influence of passion, or prejudice—not disproportionate**

The evidence in a capital resentencing in which the jury returned a death sentence fully supported the aggravating circumstance found by the jury, and there was no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary consideration.

**12. Criminal Law § 1402 (NCI4th Rev.)— death sentence—not disproportionate**

A sentence of death for the beating death of a two-year-old child by her stepfather was not disproportionate where defendant contended that his effort to assist the victim by calling 911 rendered the death sentence disproportionate, but he failed to direct the medical personnel to the victim's fatal injuries, left those injuries concealed beneath her clothing, and misled the medical personnel about her injuries. This case is more similar to cases in which the sentence of death was found proportionate to those in which it was found disproportionate.

Justice WYNN did not participate in the consideration or decision of this case.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Greeson, J., on 23 May 1997 in Superior Court, Forsyth County. Heard in the Supreme Court 28 September 1998.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*White and Crumpler, by David B. Freedman, Dudley A. Witt, and Fred G. Crumpler, Jr., for defendant-appellant.*

WHICHARD, Justice.

On 31 October 1994 defendant was indicted for first-degree murder. He was tried capitally in February 1995. The jury found defendant guilty and recommended that he be sentenced to death. The trial court imposed the death sentence. This Court found no error in the guilt-innocence phase of defendant's trial but vacated defendant's death sentence and remanded for a new capital sentencing proceeding. *State v. Flippen*, 344 N.C. 689, 477 S.E.2d 158 (1996) (*Flippen I*). Defendant's new capital sentencing proceeding was held at the 19 May 1997 Criminal Session of Superior Court, Forsyth County. A jury again recommended a sentence of death for the first-degree murder, and the trial court sentenced defendant accordingly. Defendant appeals from this sentence. We hold that defendant received a fair sentencing proceeding, free from prejudicial error, and that the sentence of death is not disproportionate.

The facts were presented in our earlier opinion, *id.* at 693-94, 477 S.E.2d at 161, and need not be restated in detail here. During defendant's new capital sentencing proceeding, the State presented evidence that defendant inflicted one or more fatal blows to his two-year-old stepdaughter's stomach. These blows tore the stepdaughter's liver and pancreas and caused internal bleeding. Prior to her death, the victim lived for approximately thirty minutes with these fatal injuries.

During this time defendant called 911 to seek medical attention for his stepdaughter. Defendant told medical personnel that the stepdaughter had fallen from a chair. Consequently, as the victim rode to the hospital in an emergency vehicle, the paramedics initially treated her for a head or C-spine injury. As the victim demonstrated increasing difficulty breathing, the paramedics removed her clothes to try to open her airway; they noticed bruising on the victim's abdomen. The paramedics then no longer believed that the victim suffered from a head or C-spine injury. The victim stopped breathing on her way to the hospital, and her heartbeat steadily decreased and ultimately quit. The paramedics performed infant CPR, and they were still performing it when the emergency vehicle arrived at the hospital, where the victim was pronounced dead.

Defendant offered as mitigating evidence that he was a high-school graduate who regularly attended church, that he maintained regular employment, and that he had a good reputation in the community for being a fine and upstanding citizen. He presented evidence that he genuinely loved his stepdaughter and had a good relationship with her with no history of physical abuse.

The jury found one aggravating circumstance: that defendant's crime was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9) (1997). The jury also found one mitigating circumstance: that defendant had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1). The jury then determined that the mitigating circumstance found was insufficient to outweigh the aggravating circumstance found and that the aggravating circumstance, when considered with the mitigating circumstance, was sufficiently substantial to call for imposition of the death penalty.

[1] Defendant first contends that this Court erred in *Flippen I* when it found prejudicial error in the trial court's sentencing-phase jury charge and remanded this matter for a new sentencing proceeding under N.C.G.S. § 15A-2000(d)(3). *See Flippen I*, 344 N.C. at 702, 477

S.E.2d at 166. Defendant argues that this Court was required to overturn the death sentence and impose a sentence of life imprisonment in lieu thereof under N.C.G.S. § 15A-2000(d)(2) because his first jury arbitrarily recommended the death sentence under the influence of passion and prejudice.

Once this Court concludes that an error exists in the instructions to the jury in the sentencing phase of a capital trial, it must remand the matter for resentencing under N.C.G.S. § 15A-2000(d)(3), which provides: "If the sentence of death and the judgment of the trial court are reversed on appeal for error in the post-verdict sentencing proceeding, the Supreme Court shall order that a new sentencing hearing be conducted." When this Court finds prejudicial error in a sentencing-phase jury instruction, it does not reach the question of arbitrariness under N.C.G.S. § 15A-2000(d)(2). *See, e.g., State v. Bonnett*, 348 N.C. 417, 449, 502 S.E.2d 563, 584 (1998) (considering whether the imposition of the death penalty was arbitrary or disproportionate under N.C.G.S. § 15A-2000(d)(2) only *after* "[h]aving found no prejudicial error in either the guilt-innocence phase or the sentencing proceeding"). Thus, when this Court finds error in the instructions in the sentencing phase, we remand the case for resentencing under N.C.G.S. § 15A-2000(d)(3) and do not reach the question of whether the defendant's sentence of death should be overturned under N.C.G.S. § 15A-2000(d)(2).

In *Flippen I* we held that during the sentencing phase of defendant's capital trial, "the trial court erred by failing to instruct the jury that the N.C.G.S. § 15A-2000(f)(1) mitigating circumstance existed as a matter of law and must be given weight." *Flippen I*, 344 N.C. at 701, 477 S.E.2d at 165. We further concluded that this error was prejudicial. *Id.* at 702, 477 S.E.2d at 166. Thus, we properly remanded for a new sentencing proceeding as required by N.C.G.S. § 15A-2000(d)(3) rather than overturning the sentence of death under N.C.G.S. § 15A-2000(d)(2). Defendant's assignment of error is overruled.

[2] Defendant next contends that the trial court erred in submitting the especially heinous, atrocious, or cruel aggravating circumstance over defendant's objection. *See* N.C.G.S. § 15A-2000(e)(9). Defendant submits that the State offered insufficient evidence to support this statutory aggravating circumstance. He argues that if we permit trial courts to submit the (e)(9) circumstance under the facts here, we will be creating a new statutory aggravating circumstance encompassed within the (e)(9) circumstance for all cases in which the homicide victim is a child.

Whether a trial court properly submitted the (e)(9) aggravating circumstance depends on the facts of the case. *State v. Gibbs,* 335 N.C. 1, 61, 436 S.E.2d 321, 356 (1993), *cert. denied,* 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). The capital offense must not be merely heinous, atrocious, or cruel; it must be especially heinous, atrocious, or cruel. *Id.* A murder is especially heinous, atrocious, or cruel when it is a conscienceless or pitiless crime which is unnecessarily torturous to the victim. *State v. Burr,* 341 N.C. 263, 307, 461 S.E.2d 602, 626 (1995), *cert. denied,* 517 U.S. 1123, 134 L. Ed. 2d 526 (1996).

Evidence of "the victim's age and the existence of a parental relationship between the victim and defendant" may be considered in determining the existence of the (e)(9) aggravating circumstance. *Id.* Evidence that the defendant was the primary caregiver of the victim also supports the (e)(9) aggravator because such a "killing betrays the trust that a baby has for its primary caregiver." *State v. Huff,* 325 N.C. 1, 56, 381 S.E.2d 635, 667 (1989), *sentence vacated on other grounds,* 497 U.S. 1021, 111 L. Ed. 2d 777 (1990). Evidence that "the injuries inflicted upon the child were numerous, going beyond what would be necessary to kill the victim" further supports a conclusion that this aggravator was properly submitted. *Burr,* 341 N.C. at 308, 461 S.E.2d at 626.

In determining whether the evidence is sufficient to support the trial court's submission of the especially heinous, atrocious, or cruel aggravator, we must consider the evidence "in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Lloyd,* 321 N.C. 301, 319, 364 S.E.2d 316, 328, *sentence vacated on other grounds,* 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

Applying these principles here, we conclude that the evidence was sufficient to support submission of the (e)(9) aggravating circumstance. Ample evidence demonstrated that defendant had a parental relationship with the victim. The victim called defendant "Daddy." On the morning of the murder, defendant was alone with her in their home, and he was her primary caregiver. The victim was only two years and four months old. As such, she was particularly vulnerable and at defendant's mercy. Defendant inflicted numerous blows upon her head, neck, and abdomen; the resulting injuries went beyond what would have been necessary to kill her. Viewing this evidence in the light most favorable to the State, we hold that the trial court did not err in submitting the (e)(9) aggravating circumstance.

**[3]** Defendant next contends that the trial court erred in failing to give a mandatory peremptory instruction on the statutory mitigating circumstance that defendant had no significant history of prior criminal activity. *See* N.C.G.S. § 15A-2000(f)(1). In defendant's first trial, the State and defendant stipulated that defendant had no significant history of prior criminal activity. Defendant contends that this stipulation in his first sentencing proceeding precluded the jury's consideration of contrary evidence presented at his new sentencing proceeding and conclusively established the (f)(1) mitigating circumstance in that proceeding.

"Any evidence that the trial court 'deems relevant to sentenc[ing]' may be introduced in the sentencing proceeding." *State v. Heatwole*, 344 N.C. 1, 25, 473 S.E.2d 310, 322 (1996) (quoting *State v. Daughtry*, 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996)), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 339 (1997). The State must be allowed to present *any* competent evidence in support of the death penalty. *Id.*

A prior stipulation or concession regarding capital sentencing circumstances does not limit the parties' presentation of evidence when relevant evidence contradicts that prior stipulation. *See State v. Adams*, 347 N.C. 48, 56-58, 490 S.E.2d 220, 223-25 (1997) (recognizing that although the State had stipulated in the defendant's first sentencing proceeding that insufficient evidence existed to support a statutory aggravating circumstance, the State could introduce evidence at the defendant's new sentencing proceeding to support that aggravating circumstance), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 878 (1998). This rule allows "both sides to introduce evidence in support of [or in opposition to] aggravating and mitigating circumstances which have been admitted into evidence by stipulation." *State v. McDougall*, 308 N.C. 1, 20-21, 301 S.E.2d 308, 320, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983).

Despite the existence of a prior stipulation on a mitigating circumstance, a "defendant is not entitled to a peremptory instruction when the evidence supporting a mitigating circumstance is controverted." *State v. Womble*, 343 N.C. 667, 683, 473 S.E.2d 291, 300 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 719 (1997). Defendant is entitled to a peremptory instruction on a mitigating circumstance only when that circumstance is supported by uncontroverted evidence. *Id.* The record shows that the evidence regarding the existence of the (f)(1) mitigating circumstance was not uncontroverted.

Although the parties stipulated in defendant's first sentencing proceeding that defendant had no significant history of prior criminal activity, this stipulation did not limit the presentation of subsequently discovered, contradictory evidence at defendant's new sentencing proceeding. *See Adams*, 347 N.C. at 56-58, 490 S.E.2d at 224-25. At defendant's new sentencing proceeding, the State properly produced evidence that defendant had twice assaulted his wife. This evidence tends to contradict the prior stipulation. Because the evidence regarding the (f)(1) mitigating circumstance was not uncontroverted at defendant's new sentencing proceeding, the trial court properly refused to peremptorily instruct the jury on the existence of this mitigator.

[4] Defendant next contends that the trial court erred in its jury instructions on nonstatutory mitigating circumstances by failing to require the jury to make separate findings as to whether those mitigating circumstances existed and whether they had mitigating value. In support of this contention, defendant explains that the allegedly erroneous instruction precludes this Court's review of his argument that the jury acted arbitrarily in rejecting nonstatutory mitigating circumstances supported by the evidence.

The trial court instructed the jury as follows:

If one or more of you finds by a preponderance of the evidence that this circumstance exists and also is deemed mitigating, you would so indicate by having your foreperson write "yes" in the space provided after this mitigating circumstance on this Issues and Recommendations form. Now, if none of you finds the circumstance to exist or if none of you deem it to have mitigating value, you would so indicate by having your foreperson write "no" in that space.

The trial court gave these instructions in substantially the same form for all of the nonstatutory mitigating circumstances submitted.

We have consistently upheld nearly identical instructions on nonstatutory mitigating circumstances, *see, e.g.*, *State v. Robinson*, 336 N.C. 78, 117, 443 S.E.2d 306, 325 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995), and "[w]e presume 'that jurors . . . attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them,' " *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (quoting *Francis v. Franklin*, 471 U.S. 307, 324

n.9, 85 L. Ed. 2d 344, 360 n.9 (1985)), *cert. denied,* 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). Nonstatutory mitigating circumstances do not have mitigating value as a matter of law, and although there may be substantial evidence to support the proffered mitigating circumstances, a jury's failure to find that the circumstances have mitigating value does not render its sentencing recommendation arbitrary and require that it be set aside. *State v. Lee,* 335 N.C. 244, 292, 439 S.E.2d 547, 572, *cert. denied,* 513 U.S. 891, 130 L. Ed. 2d 162 (1994).

Here, pursuant to *Robinson,* the trial court properly instructed the jury regarding each nonstatutory mitigating circumstance, and under *Jennings* we presume that the jury followed the instructions. Thus, pursuant to the trial court's instructions, we presume that in instances in which evidence supported the existence of a nonstatutory mitigating circumstance, the jury rejected the circumstance because it determined that the circumstance did not have mitigating value. Because nonstatutory mitigators do not have mitigating value as a matter of law, the jury may properly reject a nonstatutory mitigating circumstance that exists. *Id.* This does not render the jury's sentencing recommendation arbitrary, and it does not hinder this Court's review of that recommendation. Defendant's assignment of error is overruled.

**[5]** Defendant next contends that the trial court committed prejudicial error by admitting into evidence a videotape of the victim, filmed forty-nine days prior to her death, and testimony about defendant's prior treatment of the victim. Defendant asserts that the trial court failed to properly perform the balancing test required by N.C.G.S. § 8C-1, Rule 403, and that this evidence was inadmissible because it possessed little probative value, created a great danger of prejudice, and served merely to inflame the passions of the jury.

The Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence the court "deems relevant to sentence" may be introduced at this stage. N.C.G.S. § 15A-2000(a)(3). The State "must be permitted to present *any* competent, relevant evidence . . . which will substantially support the imposition of the death penalty." *State v. Brown,* 315 N.C. 40, 61, 337 S.E.2d 808, 824 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). Thus, trial courts are not required to perform the Rule 403 balancing test during a sentencing proceeding. *Daughtry,* 340 N.C. at 517-18, 459 S.E.2d at 762.

STATE v. FLIPPEN

[349 N.C. 264 (1998)]

"Whether the use of photographic evidence . . . is more probative than prejudicial [is a] matter[] generally left to the sound discretion of the trial court." *State v. Harden*, 344 N.C. 542, 559, 476 S.E.2d 658, 666 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 483 (1997). " '[W]e have repeatedly held that showing photographs of victims made during their lives is not prejudicial error.' " *State v. Bishop*, 346 N.C. 365, 388, 488 S.E.2d 769, 781 (1997) (quoting *State v. Norwood*, 344 N.C. 511, 532, 476 S.E.2d 349, 358 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 500 (1997)). Likewise, the trial court may, in its discretion, admit evidence of the defendant's prior conduct toward the victim because prior physical mistreatment or malicious behavior by a defendant toward a homicide victim is relevant to prove malice, ill will, intent, and premeditation and deliberation. *State v. Alston*, 341 N.C. 198, 229, 461 S.E.2d 687, 703 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996).

Here, the trial court determined that the videotape depicting the two-year-old, thirty-pound victim forty-nine days prior to her death was "probative of the State's case to show [the victim's] vulnerability and . . . to show why it would be heinous, atrocious or cruel" for a man as large and powerful as defendant to murder her with his hands while she was in his care. The court recognized "the fact that [the videotape] is prejudicial," but it also noted that "just the mere fact of a young two year old child being murdered, of course, is prejudicial." Ultimately, the court concluded that "it's not unfairly prejudicial in [sic] a probative value, I would think, would fair [sic] exceed and outweigh any prejudicial effect." The trial court did not abuse its discretion by admitting this evidence after thorough consideration of its probative value. *See Bishop*, 346 N.C. at 388, 488 S.E.2d at 780.

**[6]** The trial court also admitted testimony of Felicia Carle about her observations of defendant's prior treatment of the victim. Carle testified that she once saw the victim start to cry as defendant approached her and that she once witnessed defendant say he would rather play basketball than watch the victim on an evening when the victim's mother was going to a concert. Defendant neither moved *in limine* to exclude this testimony nor objected to it. Defendant thus failed to properly preserve his right to appellate review. *See* N.C. R. App. P. 10(b)(1). Because this issue was not preserved for appeal, we may review it only for plain error. *State v. Allen*, 339 N.C. 545, 555, 453 S.E.2d 150, 155 (1995), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997). Defendant also waived plain error review by fail-

ing to allege in his assignment of error that the trial court committed plain error. N.C. R. App. P. 10(c)(4); *State v. Truesdale,* 340 N.C. 229, 232-33, 456 S.E.2d 299, 301 (1995). This assignment of error is overruled.

**[7]** In defendant's final assignments of error, he contends that the trial court abused its discretion in a number of its rulings regarding various prosecutorial statements, questions, and arguments, and in its denial of defendant's requests for peremptory instructions regarding three nonstatutory mitigating circumstances. Defendant first contends that the trial court erred in overruling objections to three similar statements by the prosecutor during jury selection. The prosecutor stated to one prospective juror, "I understand that it takes a lot of courage to vote for the death penalty in a case." He similarly stated to another, "Let me assure you that the State of North Carolina understands what we're asking you to do and we understand it takes a lot of courage." The prosecutor also asked another, "You feel like you have the courage to be able to vote for the death penalty in a particular case?"

Trial judges do not abuse their discretion by allowing prosecutors to ask jurors whether they have the "backbone" to impose the death penalty, *State v. Hinson,* 310 N.C. 245, 252, 311 S.E.2d 256, 261, *cert. denied,* 469 U.S. 839, 83 L. Ed. 2d 78 (1984), or whether they are "strong enough to recommend the death penalty," *State v. Smith,* 328 N.C. 99, 130, 400 S.E.2d 712, 729 (1991). Thus, the trial court properly overruled defendant's objections to each of the identified comments about prospective jurors' "courage" or ability to impose the death penalty.

**[8]** Defendant next complains of questions the prosecutor asked of a defense witness about defendant's testimony in his first trial. Defendant contends that these questions drew attention to the fact that defendant did not testify in the new sentencing proceeding, thus violating defendant's Fifth Amendment rights. The prosecutor asked a defense witness, "But you heard his testimony last time, did you not?" The witness answered that he had heard defendant's prior testimony, and the prosecutor then asked, "And he testified [that the victim] fell from a chair, didn't he?" Defendant did not object to either of these questions about defendant's prior testimony. Later, defendant objected to questions about the impression such testimony left with the jury. The trial court ultimately sustained defendant's objection to questions about the first jury's impression of defendant's prior

testimony. Defendant never raised a constitutional issue before the trial court stemming from any questioning regarding defendant's prior testimony.

In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection, or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent. N.C. R. App. P. 10(b)(1). Defendant did not object at trial to the questions he complains of here, and he thus failed to properly preserve this issue for our review. Because this issue was not preserved, we may review it only for plain error. *Allen*, 339 N.C. at 555, 453 S.E.2d at 155. However, defendant also waived plain-error review by failing to allege in his assignment of error that the trial court committed plain error. N.C. R. App. P. 10(c)(4); *Truesdale*, 340 N.C. at 232-33, 456 S.E.2d at 301. Defendant further waived review of any constitutional issue by failing to raise a constitutional issue at the sentencing proceeding. *State v. Elliott*, 344 N.C. 242, 277, 475 S.E.2d 202, 218 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 312 (1997). Defendant's assignment of error is overruled.

[9] Defendant also complains that the trial court erred in failing to sustain defendant's objection to the prosecutor's characterization of defendant's demeanor at trial as "sniveling." A prosecutor may properly comment on a defendant's demeanor displayed throughout the trial. *State v. Price*, 326 N.C. 56, 85, 388 S.E.2d 84, 100, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990). Remarks relating to a defendant's demeanor are permissible because the defendant's demeanor is "before the jury at all times." *State v. Myers*, 299 N.C. 671, 680, 263 S.E.2d 768, 774 (1980). Thus, the trial court did not abuse its discretion in overruling defendant's objection to the prosecutor's remark.

[10] Defendant next complains that the trial court erred and abused its discretion in denying defendant's requests for peremptory instructions on the following nonstatutory mitigating circumstances: (1) that defendant was kind and considerate to others, (2) that defendant assisted the emergency medical technicians, and (3) that defendant loved his stepdaughter. A defendant is not entitled to a peremptory instruction when the evidence supporting a mitigating circumstance is controverted. *Womble*, 343 N.C. at 683, 473 S.E.2d at 300. Although some evidence suggested that defendant was kind and considerate toward others, other evidence showed that defendant assaulted his

wife twice, became angry with his stepdaughter easily, and scared his stepdaughter. Although defendant called 911 and directed the emergency medical technicians to his injured stepdaughter, defendant also failed to tell the technicians that the victim suffered from injuries around her abdomen as a result of his punches. Because defendant failed to provide full information to the emergency medical technicians, they initially treated the victim for head and spinal injuries rather than for the internal bleeding that ultimately caused her death. A jury could reasonably conclude that defendant's failure to provide full information to the emergency medical technicians hindered, rather than assisted, the technicians in identifying and treating the victim's fatal injuries. Finally, a jury could reasonably conclude that the evidence regarding defendant's brutal and fatal beating of his stepdaughter reflected a lack of love for her. Thus, in each instance in which the trial court denied defendant's request for a peremptory instruction on nonstatutory mitigating circumstances, the evidence was controverted, and the trial court acted properly under *Womble* in denying the request.

[11] We now turn to our duty to ascertain: (1) whether the evidence supports the aggravating circumstances found by the jury; (2) whether the sentence was entered under the influence of passion, prejudice, or any other arbitrary consideration; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

The jury found the (e)(9) aggravating circumstance that defendant's murder of his stepdaughter was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9). The record fully supports the jury's finding of this aggravating circumstance, and we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We therefore turn to our final duty of proportionality review.

[12] One purpose of proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *Lee*, 335 N.C. at 294, 439 S.E.2d at 573. Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was dispro-

portionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by Gaines*, 345 N.C. at 647, 483 S.E.2d at 396, *and Vandiver*, 321 N.C. at 570, 364 S.E.2d at 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is distinguishable from each of those cases.

Defendant contends that his effort to assist the victim by calling 911 renders his death sentence disproportionate. Although defendant does not direct us to any authority to support this assertion, we recognize that we have considered evidence of a defendant's remorse for his action as important in proportionality review. In *Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182, we stated that "[w]e deem it important in amelioration of defendant's senseless act that immediately after he shot the victim, he exhibited a concern for [the victim's] life and remorse for his action by directing the driver of the automobile to the hospital." The defendant in *Bondurant* exhibited his remorse as he "readily spoke with policemen at the hospital, confessing that he fired the shot which killed [the victim]." *Id.* at 694, 309 S.E.2d at 183.

Defendant here did not exhibit the kind of conduct we recognized as ameliorating in *Bondurant*. Defendant failed to direct the medical personnel to the victim's fatal injuries and left those injuries concealed beneath her clothing. Further, defendant misled the medical personnel about the victim's injuries, telling them that the victim fell from a chair. Thus, although the defendant called 911, he failed to exhibit sufficient remorse to ameliorate his murder of his stepdaughter as did the defendant in *Bondurant*.

The present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate. *See, e.g., Burr*, 341 N.C. at 315, 461 S.E.2d at 631 (concluding that the death penalty was proportionate in a case in which an infant was shaken and beaten to death by the mother's boyfriend).

After comparing this case to similar cases as to the crime and the defendant, we cannot conclude that this death sentence is excessive or disproportionate. Defendant received a fair capital sentencing pro-

ceeding, free from prejudicial error. Therefore, the judgment of the trial court must be and is left undisturbed.

NO ERROR.

Justice WYNN did not participate in the consideration or decision of this case.