STATE OF NORTH CAROLINA v. ALLEN RICHARD HOLMAN

No. 200A99

(Filed 21 December 2000)

**1. Homicide— first-degree murder—short-form indictment**

Although the short-form indictment used to charge defendant with first-degree murder did not allege the elements of premeditation and deliberation, the trial court did not err in concluding the indictment was constitutional because defendant had notice that he was charged with first-degree murder and that the maximum penalty to which he could be subjected was death.

**2. Homicide— first-degree murder—indictment—aggravating circumstances**

Although the short-form indictment used to charge defendant with first-degree murder did not allege the aggravating circumstances upon which the State intended to rely at trial, the trial court did not err in concluding the indictment was constitutional because the State is not required to allege aggravating circumstances upon which it intends to rely.

**3. Sentencing— capital—aggravating circumstance—especially heinous, atrocious, or cruel**

The trial court did not err during a capital sentencing proceeding by submitting the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel in a situation where defendant-husband chased and rammed his victim-wife's car, returned to the parking lot once the first officer had left, shot the victim in the back, got back into his car, shot the victim again, and left the victim helpless on the ground, because: (1) the victim was aware of who was pursuing her and feared for her life; (2) a reasonable jury could find that defendant's actions were calculated to torture the victim psychologically and to leave her aware that she was helpless to prevent impending death; and (3) the method chosen by defendant to carry out the killing was conscienceless and pitiless inflicting excessive fear and psychological torture.

**4. Evidence— capital first-degree murder—motion in limine—deferred ruling**

The trial court did not err during a capital sentencing proceeding by deferring its ruling on defendant's motion in limine concerning whether introduction of certain evidence including a letter and photograph would open the door to permit the State to introduce evidence of defendant's prior convictions, because: (1) the trial court could not know whether the context of the questioning or the specific questions themselves would open the door to evidence of defendant's prior convictions; and (2) defendant's decision not to introduce the evidence was a purely tactical one based on the possibility that the questioning might open the door to undesired cross-examination.

**5. Sentencing— capital—death penalty not disproportionate**

The trial court did not err by imposing the death sentence because: (1) defendant led police on a car chase away from the victim and demonstrated a callous lack of concern for the victim during his conversation with the victim's co-worker; and (2) the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel is sufficient standing alone to support a death sentence.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Spencer (James C.,

**STATE v. HOLMAN**

[353 N.C. 174 (2000)]

Jr.), J., on 7 April 1998 in Superior Court, Wake County, upon defendant's plea of guilty of first-degree murder. Heard in the Supreme Court 16 October 2000.

*Michael F. Easley, Attorney General, by Joan M. Cunningham, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant Allen Richard Holman was indicted on 19 August 1997 for the first-degree murder of his wife, Linda J. Holman. On 17 March 1998, prior to jury selection, defendant entered a plea of guilty to first-degree murder on the basis of premeditation and deliberation. A jury was empaneled to hear evidence and recommend a sentence to the trial court. At the conclusion of the capital sentencing proceeding, the jury recommended a sentence of death for the murder; and the trial court entered judgment accordingly. For the reasons discussed herein, we conclude that defendant's capital sentencing proceeding was free from prejudicial error.

The State's evidence presented at the sentencing proceeding tended to show that on 6 July 1997 the victim called the Morrisville Police Department and stated that she believed that her husband, defendant, would kill her if she returned home. Police officers were dispatched to meet the victim at the location from which she placed the call and to escort her home. When the officers met the victim, she appeared hysterical; she was crying and shaking, and she acted terrified. The officers escorted the victim home and spoke to defendant, who apologized for causing the officers to be called out and told the officers that he was packing to move away. Defendant was allowed to collect his remaining property and left with a warning from the officers that he would be cited for trespass if he returned.

The next day the victim unsuccessfully attempted to remove defendant's name from the lease to the home she rented, and she contracted to have a security system installed. Sometime thereafter, the victim began parking her car so that it faced the road and was closer to the door to the house; changed her phone number and the locks on her house; nailed the windows of her house shut; and began keeping the curtains drawn so that defendant could not shoot her from outside the house. The victim told the law enforcement agencies of

nearby municipalities that she feared defendant would kill her, and she verified that officers knew how to get to her house. The victim also circulated a petition to have the street that she lived on officially named to enable quicker response from police and emergency personnel. Witnesses testified that from 6 July 1997 to 28 July 1997 the victim repeatedly told them that she was terrified that defendant was going to kill her.

Around 6:04 a.m. on 28 July 1997 the victim called 911 from her cellular phone and told the dispatcher that she was driving eighty-five to ninety miles per hour on Highway 55 towards Apex, North Carolina, with defendant chasing her in his own car. The victim also told the dispatcher that defendant was trying to kill her and that he was ramming her vehicle with his own vehicle.

The dispatcher alerted police officers and told the victim that officers were waiting farther up the road for her car to pass them. The victim spotted an officer's car in a grocery store parking lot and stopped her car next to it. The officer in the car saw defendant make a quick turn and drive away. The victim was terrified, but the officer told her to wait in the parking lot for other officers to arrive; and the officer began pursuit of defendant.

Defendant eluded the officer and returned to the parking lot where the victim was still waiting for the other officers to arrive. A short time later Sergeant Denson, an officer with the Apex Police Department, pulled into the parking lot and saw defendant's car parked in front of the victim's car and defendant standing beside his driver's side door holding a shotgun. Defendant then got into his car, pointed the shotgun out the window, fired a shot, and drove away. As Sergeant Denson began chasing defendant in his own car, he saw the victim lying on the ground on the driver's side of her car in a pool of blood. Sergeant Denson pursued defendant and requested that other officers attend to the victim. When the officers requested by Sergeant Denson arrived at the parking lot, they found the victim's lifeless body lying face-up on the ground by her car.

Upon leaving the parking lot defendant drove back towards the victim's house with officers in pursuit. When he arrived at the victim's house, defendant held police at bay for a time before shooting himself in the abdomen. During this time in a phone conversation with a co-worker of the victim, defendant admitted shooting the victim twice in the parking lot. Defendant later also admitted to an officer that he had shot the victim. Police officers took defendant into cus-

tody. Defendant was subsequently treated by medical personnel for the self-inflicted wound.

The medical examiner who performed the autopsy on the victim found two shotgun slug entry wounds in the victim's back. The medical examiner further determined the cause of death to be massive blood loss attributable to these wounds.

Additional facts will be presented as needed to discuss specific issues.

## JURISDICTIONAL ISSUE

[1] Defendant first contends that the short-form murder indictment violated his rights under the Fifth, Sixth, and Eighth Amendments as incorporated by the Fourteenth Amendment Due Process Clause of the United States Constitution and his rights under Article I, Sections 19, 22, and 23 of the North Carolina Constitution as it failed to allege all the elements of first-degree murder and failed to allege aggravating circumstances on which the State intended to rely for imposition of the death penalty.

The indictment against defendant for murder contained the following language:

> The jurors for the State upon their oath present that on or about the 28th day of July, 1997, in Wake County the defendant . . . unlawfully, willfully and feloniously and of malice aforethought did kill and murder Linda J. Holman. This act was done in violation of G.S. 14-17.

This indictment complied with the requirements of N.C.G.S. § 15-144, for a short-form murder indictment. N.C.G.S. § 15-144 (1999). An indictment that complies with the requirements of N.C.G.S. § 15-144 will support a conviction of both first-degree and second-degree murder. See State v. King, 311 N.C. 603, 608, 320 S.E.2d 1, 5 (1984). This Court has consistently held that a short-form indictment complying with N.C.G.S. § 15-144 satisfies the North Carolina Constitution. See, e.g., State v. Avery, 315 N.C. 1, 12-14, 337 S.E.2d 789, 792-93 (1985).

In Jones v. United States, relied on by defendant, the United States Supreme Court stated that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Jones, 526 U.S. 227, 243 n.6, 143 L. Ed. 2d

311, 326 n.6 (1999). In *Apprendi v. New Jersey*, —— U.S. ——, ——, 147 L. Ed. 2d 435, 446 (2000), the Court reaffirmed that portion of *Jones* in applying it to state criminal proceedings. Relying on this language from *Jones*, defendant argues that the short-form murder indictment in this case is insufficient in that it does not allege premeditation and deliberation.

However, in *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), this Court reviewed a short-form murder indictment in light of the recent decision by the United States Supreme Court in *Apprendi* and held that the short-form indictment is sufficient to allege first-degree murder under the United States Constitution:

> The crime of first-degree murder and the accompanying maximum penalty of death, as set forth in N.C.G.S. § 14-17 and North Carolina's capital sentencing statute, are encompassed within the language of the short-form indictment. We, therefore, conclude that premeditation and deliberation need not be separately alleged in the short-form indictment. Further, the punishment to which defendant was sentenced, namely, the death penalty, is the prescribed statutory maximum punishment for first-degree murder in North Carolina. Thus, no additional facts needed to be charged in the indictment. Given the foregoing, defendant had notice that he was charged with first-degree murder and that the maximum penalty to which he could be subjected was death.

*Id.* at 175, 531 S.E.2d at 437-38. Considered in light of our recent decision in *Braxton* as well as our decisions in *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, —— U.S. ——, 2000 WL 1468566 (Nov. 27, 2000) (No. 00-6281), and *State v. Lawrence*, 352 N.C. 1, 530 S.E.2d 807 (2000), defendant's argument that the short-form murder indictment violates his Fourteenth Amendment Due Process rights is without merit.

Defendant also argues that the statute authorizing short-form indictments, N.C.G.S. § 15-144, is unconstitutional in that: (i) the statute violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and of Article I, Section 19 of the North Carolina Constitution by singling out a class of defendants and impinging on their fundamental right to notice under the Sixth Amendment; and (ii) the short-form murder indictment does not allow a defendant to determine whether the grand jury voted to indict the defendant for first-degree or second-degree murder.

Addressing defendant's claim that the short-form murder indictment violates the Equal Protection Clauses, we disagree that any existing classification impinges upon defendant's Sixth Amendment right to notice or his rights under Article I, Section 19 of the North Carolina Constitution. As we explained in *Braxton,* by reference to N.C.G.S. § 14-17 "[t]he crime of first-degree murder and the accompanying maximum penalty of death, as set forth in N.C.G.S. § 14-17 and North Carolina's capital sentencing statute, are encompassed within the language of the short-form indictment." *Braxton,* 352 N.C. at 175, 531 S.E.2d at 437-38. Therefore, the short-form indictment gave defendant notice of all elements of first-degree murder; and defendant's right to notice has not been impinged upon.

As to defendant's argument that the indictment does not allow a defendant to determine whether the grand jury voted to indict the defendant for first-degree or second-degree murder, defendant did not make an assignment of error on this basis and is, thus, procedurally barred from arguing this issue on appeal. N.C. R. App. P. 10(a).

[2] Defendant next argues that the short-form murder indictment was unconstitutional in that it failed to allege the aggravating circumstances upon which the State intended to rely at trial. Defendant also contends that the trial court erred in denying defendant's motion for a bill of particulars to determine the aggravating circumstances upon which the State intended to rely. This Court recently held in *State v. Golphin,* 352 N.C. 364, 533 S.E.2d 168 (2000), that, even in light of *Jones* and *Apprendi,* the State is not required to allege aggravating circumstances in the indictment; and a trial court may not require the State to disclose the aggravating circumstances upon which it intends to rely. *Id.* at 396-97, 533 S.E.2d at 193-94. Defendant has made no new argument and has cited no additional authority persuading us to depart from this holding.

Based on the foregoing, we conclude that the trial court did not err in denying defendant's motion to quash the indictment, defendant's motion to dismiss the indictment, and defendant's motions for bills of particulars or by accepting defendant's guilty plea to first-degree murder and entering judgment on the jury's recommendation of death.

## SENTENCING ISSUES

[3] Defendant next assigns error to the trial court's submission to the jury of the aggravating circumstance that the murder was especially

heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9) (1999). Defendant argues that the evidence was insufficient to support the (e)(9) aggravating circumstance. We disagree.

Whether the trial court properly submitted the (e)(9) aggravating circumstance depends upon the particular facts and circumstances of this case. *See State v. Gibbs*, 335 N.C. 1, 61, 436 S.E.2d 321, 356 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). Furthermore, "we must consider the evidence in the light most favorable to the State; and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Fleming*, 350 N.C. 109, 119, 512 S.E.2d 720, 729, *cert. denied*, —— U.S. ——, 145 L. Ed. 2d 274 (1999); *see also State v. Flippen*, 349 N.C. 264, 270, 506 S.E.2d 702, 706 (1998), *cert. denied*, 526 U.S. 1135, 143 L. Ed. 2d 1015 (1999).

This Court has held that in determining whether sufficient evidence was presented to support submission of the (e)(9) aggravating circumstance, it is relevant whether the murder was a "conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Flippen*, 349 N.C. at 270, 506 S.E.2d at 706. We have interpreted the phrase "unnecessarily torturous" to encompass both physical and psychological torture, and to include a killing that leaves the victim aware of impending death but helpless to prevent it. *See Gibbs*, 335 N.C. at 61-62, 436 S.E.2d at 356. Likewise,

> where the facts in evidence support a finding that a victim is stalked and during the stalking the victim is aware of it and in fear that death is likely to result, the issue of whether the murder is especially heinous, atrocious, or cruel may be properly submitted for jury consideration.

*State v. Moose*, 310 N.C. 482, 494, 313 S.E.2d 507, 515 (1984).

Applying these principles to the case at hand, we conclude that ample evidence supported submission of this circumstance to the jury. In *Moose* this Court held that evidence that the victim was chased in his car by a stranger and killed when they both stopped was insufficient to allow submission of the (e)(9) circumstance. *Moose*, 310 N.C. at 494-96, 313 S.E.2d at 516. The Court held that there was no evidence that the victim feared for his life, as he did not know who was chasing him and, therefore, did not know what was going to happen when he stopped his car. *Id.* at 495, 313 S.E.2d at 516. By contrast, the victim in this case was well aware of who was pursuing her and, as a result, did fear for her life. While being chased by defend-

ant, the victim said to the 911 operator, "my husbands [sic] trying to kill me," and, "Oh please God. Oh please I don't want to die now." The victim, by her own explicit statements, knew who was chasing her and feared that death would be the likely result.

Defendant further contends that once the victim reached the safety of the first officer in the parking lot, her fear subsided and she was, therefore, not fearful of death immediately before the shooting occurred. We address this contention assuming *arguendo* that the victim no longer feared for her life once she reached the officer and that such a determination is relevant. Defendant's contention that the victim's state of mind at the time of the killing was mere apprehension and uncertainty, like the victim in *Moose*, ignores the terrible fear the victim must have felt when defendant returned to the parking lot and no officers were present to protect her. Likewise, the victim would have feared for her life between the time when defendant first shot her and when he shot her the second time from his car. A jury could reasonably find that these actions, in addition to defendant's chasing and ramming the victim's car with his own, left "the victim in her 'last moments aware of but helpless to prevent impending death.' " *Gibbs*, 335 N.C. at 62, 436 S.E.2d at 356 (quoting *State v. Hamlet*, 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984)).

Defendant also contends that his actions were not calculated to cause the victim unnecessary fear; rather, defendant took only the actions necessary to carry out his goal of killing her. This Court has never held that a defendant must intend or calculate the excessive psychological torture of his victim for a murder to be deemed especially heinous, atrocious, or cruel. The critical inquiry is whether the murder was in fact physically or psychologically torturous. *See, e.g.*, *Gibbs*, 335 N.C. at 61-62, 436 S.E.2d at 356 ("killings less violent but 'conscienceless, pitiless, or unnecessarily torturous to the victim,' *State v. Brown*, 315 N.C. 40, 65, 337 S.E.2d 808, 826-27 (1985)[, *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988)], including those which leave the victim in her 'last moments aware of but helpless to prevent impending death,' *State v. Hamlet*, 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984)"); *Brown*, 315 N.C. at 66, 337 S.E.2d at 827 ("killings which are less violent, but involve the infliction of psychological torture, placing the victim in agony in his last moments, aware of, but helpless to prevent, impending death"); *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E.2d 783, 786 (1983) ("focus should be on whether the facts of the case disclose *excessive* brutal-

ity, or physical pain, psychological suffering, or dehumanizing aspects *not normally present*"). Even were we to hold that evidence of calculation by defendant is required, in this case defendant chased and rammed the victim's car, returned to the parking lot once the first officer had left, shot the victim in the back, got back into his car, shot the victim again, and left the victim helpless on the ground. Viewing this evidence in the light most favorable to the State, a reasonable jury could find that defendant's actions were calculated to torture the victim psychologically and to leave her aware that she was helpless to prevent impending death.

The method chosen by defendant to carry out the killing was conscienceless and pitiless inflicting excessive fear and psychological torture. Therefore, we conclude that sufficient evidence was presented to allow the trial court to submit the (e)(9) aggravating circumstance to the jury. This assignment of error is overruled.

**[4]** Defendant next contends that the trial court erred in deferring its ruling on whether introduction of certain evidence by defendant would open the door to permit the State to introduce irrelevant and prejudicial evidence about defendant's prior convictions. Defendant argues that the trial court's refusal to rule violated defendant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution and Article I, Sections 19, 23, and 27 of the North Carolina Constitution in that defendant was thereby improperly discouraged from seeking to introduce these items into evidence.

During the sentencing proceeding defendant contemplated introducing into evidence a recent letter found in the victim's car from the victim to her ex-husband, Jamie Johnson, and photographs of Johnson, including one nude photograph, that were found by the victim's bed. Defendant considered introduction of these items as evidence that the victim was rekindling the old relationship and, therefore, as evidence in support of the mitigating circumstance that defendant was acting under a mental or emotional disturbance at the time of the killing.

Defendant moved for a ruling that introduction of the letter and photographs would not "open the door" to allow the State to introduce the following evidence, which the trial court had previously ruled was irrelevant: that defendant was Johnson's cellmate when Johnson was still married to the victim, that defendant initially met the victim while defendant was a cellmate with Johnson, and the underlying charge for defendant's prison term at that time. The trial

court deferred ruling on the motion until it heard defendant's questions and their context in introducing the letters and photographs, stating:

> Well, I think that door—while it might get open—I don't think it automatically flies open . . . .
>
>       . . . .
>
>     . . . [N]either can I say that the door would not be opened, depending on what's asked. So, I mean, that's a matter they'll have to consider, I suppose.

Defendant chose not to introduce the letter and pictures, and now argues that the trial court's failure to make an immediate ruling improperly chilled defendant's right to present evidence. We disagree.

Though this motion was not made as a pretrial motion, it appears to be in the nature of a motion *in limine*; thus, we will address it as such. *See State v. Hightower*, 340 N.C. 735, 746, 459 S.E.2d 739, 745 (1995). The decision whether to grant a motion *in limine* rests in the discretion of the trial court. *Id.* at 746-47, 459 S.E.2d at 745.

The trial court had already decided that evidence of defendant's prior convictions was irrelevant to the sentencing proceeding. "However, '[t]his Court has consistently permitted the introduction of evidence in explanation or rebuttal of a particular fact or transaction even though such latter evidence would be incompetent or irrelevant had it been offered initially.' " *State v. Bishop*, 346 N.C. 365, 389, 488 S.E.2d 769, 782 (1997) (quoting *State v. Alston*, 341 N.C. 198, 234, 461 S.E.2d 687, 706 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996)).

In this case the trial court could not properly rule upon defendant's motion when it was made, as the trial court could not know whether the context of the questioning or the specific questions themselves would open the door to evidence of defendant's prior convictions. In *State v. White*, 340 N.C. 264, 288-89, 457 S.E.2d 841, 855, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995), this Court held that even though the State's evidence was inadmissible, the trial court did not err in refusing to rule on defendant's motion *in limine* to prohibit cross-examination about the inadmissible evidence, as the trial court could not know if defendant would open the door to the cross-examination.

At the point when the trial court deferred its ruling in the present case, it did not have sufficient information to decide upon the motion knowledgeably. Therefore, the trial court did not abuse its discretion by deferring its ruling on the motion until sufficient information was presented to allow the trial court to make a proper and informed decision.

Defendant's reliance upon this Court's decision in *State v. Lamb*, 321 N.C. 633, 365 S.E.2d 600 (1988), to support his argument that the trial court's failure to make an immediate ruling impermissibly chilled defendant's right to present evidence is misplaced. In *Lamb* this Court held that the trial court's "bald denial" of the defendant's motion to exclude statements that appeared inadmissible on their face impermissibly chilled the defendant's right to testify where it was obvious that the defendant's decision not to testify was based on the ruling. *Id.* at 649, 365 S.E.2d at 609. However, in this case the trial court did not issue a bald denial; the trial court merely deferred its ruling. Defendant's decision not to introduce the evidence in question was a purely tactical one based on the possibility that the questioning might open the door to undesired cross-examination. Defendant's choice of tactics in this instance did not implicate any of his rights. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises five additional issues which he concedes have previously been decided contrary to his position by this Court: (i) whether the instructions to the jury on the "especially heinous, atrocious, or cruel" aggravating circumstance were unconstitutionally vague, as they failed to distinguish death-eligible murders from those which are not death-eligible; (ii) whether the trial court erred by denying defendant's motion for allocution; (iii) whether the trial court erred in using the word "satisfy" in the jury instructions for defining defendant's burden of proof applicable to mitigating circumstances; (iv) whether the trial court committed constitutional error in allowing the jury to refuse to give effect to mitigating evidence if the jury deemed the evidence not to have mitigating value; and (v) whether the death penalty is inherently cruel and unusual and the North Carolina capital sentencing scheme unconstitutionally vague and overbroad.

Defendant raises these issues for purposes of urging this Court to reexamine its prior holdings. We have considered defendant's arguments on these issues and conclude that defendant has demonstrated

no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY

[5] Finally, defendant argues that the death sentence imposed in this case is disproportionate to the sentences imposed in similar cases, considering both the crime and the defendant. This Court has the exclusive statutory duty in capital cases to review the record and determine (i) whether the record supports the aggravating circumstances found by the jury; (ii) whether the death sentence was entered under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). Having thoroughly reviewed the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstance found by the jury. Further, we find no suggestion that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. Accordingly, we turn to our final statutory duty of proportionality review.

Defendant pled guilty to first-degree murder based on premeditation and deliberation. At defendant's sentencing proceeding, the jury found one of the submitted aggravating circumstances: that the murder was especially heinous, atrocious, or cruel. N.C.G.S. § 15A-2000(e)(9). A second aggravating circumstance was submitted to but not found by the jury: that the murder was part of a course of conduct in which defendant committed other crimes of violence against another person. N.C.G.S. § 15A-2000(e)(11).

The jury found one statutory mitigating circumstance: that the murder was committed while defendant was under the influence of mental or emotional disturbance. N.C.G.S. § 15A-2000(f)(2). The catchall statutory mitigating circumstance was submitted to but not found by the jury. N.C.G.S. § 15A-2000(f)(9). Of the eight nonstatutory mitigating circumstances submitted, the jury found that two had mitigating value: (i) that defendant suffered from depression which was exacerbated by a series of events which followed his on-the-job injury, and (ii) that defendant's attempt to reconcile with his wife failed.

We begin our analysis by comparing this case to those cases in which this Court has determined the sentence of death to be disproportionate. We have determined the death penalty to be dispropor-

tionate on seven occasions. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

Of the seven cases where we have held the death sentence to be disproportionate, only *Stokes* and *Bondurant* involved the especially heinous, atrocious, or cruel aggravating circumstance. *See State v. Spruill*, 338 N.C. 612, 664, 452 S.E.2d 279, 307 (1994), *cert. denied*, 516 U.S. 834, 133 L. Ed. 2d 63 (1995). Significant dissimilarities between *Stokes* and the case at hand include that: (i) the defendant in *Stokes* was only seventeen years old, *see Stokes*, 319 N.C. at 11, 352 S.E.2d at 658; whereas, defendant in this case was thirty-eight; and (ii) in *Stokes* no evidence showed who was the ringleader, *id.* at 21, 352 S.E.2d at 664; whereas, defendant in this case was solely responsible for his crime. The present case is also significantly different from *Bondurant*, wherein the defendant immediately exhibited remorse and concern for the victim's life by helping him get medical treatment. *See Bondurant*, 309 N.C. at 694, 309 S.E.2d at 182-83. By contrast, defendant in this case led police on a car chase away from the victim and demonstrated a callous lack of concern for the victim during his conversation with the victim's co-worker.

In carrying out this statutory duty, we also consider cases in which this Court has found the death penalty proportionate; however, "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *State v. McCollum*, 334 N.C. 208, 244, 433 S.E.2d 144, 164 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). Noting that this Court has held that the (e)(9) aggravating circumstance, standing alone, is sufficient to support a sentence of death, *see State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995), we conclude that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found the sentence disproportionate or to those in which juries have consistently returned recommendations of life imprisonment.

FROST v. MAZDA MOTORS OF AM., INC.

[353 N.C. 188 (2000)]

*See, e.g., State v. Spruill*, 320 N.C. 688, 360 S.E.2d 667 (1987) (death sentence upheld where the defendant, suffering from mental and emotional problems, threatened his ex-girlfriend, followed her to a public place, and stabbed her to death after initially being deterred by bystanders, and where the jury found that the (e)(9) aggravating circumstance existed), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 934 (1988); *State v. Boyd*, 311 N.C. 408, 319 S.E.2d 189 (1984) (death sentence upheld where the defendant threatened his ex-girlfriend, stabbed her to death in a public parking lot, and showed no remorse for the crime, and where the jury found the (e)(9) aggravating circumstance to be present), *cert. denied*, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985); *State v. Martin*, 303 N.C. 246, 278 S.E.2d 214 (death sentence upheld where the defendant, suffering from mental and emotional problems, threatened his estranged wife for months before following her to the crime scene and killing her and showed no remorse for the crime, and where the jury found the (e)(9) aggravating circumstance to be present), *cert. denied*, 454 U.S. 933, 70 L. Ed. 2d 240 (1981).

We conclude, therefore, that defendant's death sentence was not excessive or disproportionate. We hold that defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. Accordingly, the judgment of death is left undisturbed.

NO ERROR.